## 8309

### DOUGLASS v. CITY COUNCIL OF GREENVILLE.

1. CITIES AND TOWNS.—AN ORDINANCE vesting the power in the city council to prohibit the location and operation of a feed and livery stable at points not thought by it to be for the public good is within the legislative grant of power to cities and towns in this State under section 1999, Code 1902.

2. IBID.—IBID.—The motives of the members of a city council in passing an ordinance cannot be inquired into by the Courts, except as disclosed on the face of the act or inferable from its operation. But here the Court looked into the evidence and holds that it does not sustain the charge that the ordinance was adopted because of the influence of a citizen over the council members.

3. IBID.—IBID.—POLICE POWER.—Such an ordinance is a valid reasonable exercise of the police power, as a livery stable may be a nuisance if operated in one place and not if operated in another.

4. IBID.—IBID.—CONSTITUTIONAL LAW.—Nor is such an ordinance discriminatory because the provision that the council may refuse a permit upon a consideration of the circumstances of each case may afford opportunity for unfair discrimination in administration, unless it so appears on the face. Nor is it discriminatory for the reason that it was enacted to prevent the petitioner from carrying on the business at the place it was begun.

5. IBID.—IBID.—IBID.—Nor can the fact that petitioner was granted a permit to build a livery stable at a particular location and after he had begun an ordinance was enacted under which the permit was revoked avail against the ordinance.

   *Dobbins* v. *Los Angeles,* 195 U. S. 222, *distinguished from this case.*

6. IBID.—IBID.—IBID.—The evidence here falls short of showing the license to build was arbitrarily or capriciously refused.

7. REHEARING refused.

Petition in the original jurisdiction of this Court by George J. Douglass for writ of mandamus against the City Council of Greenville.

*Mr. Wilton H. Earle,* for petitioner, cites: *Ordinance is not within legislative grant:* 23 S. C. 523; 35 S. C. 14; 41 Am. St. R. 235; Dillon, secs. 319, 322, 327; 78 Ill. 405; 1 Col. App. 157; 123 Am. St. R. 33; 32 Am. R. 138; 44 Am. R. 10. *It is unreasonable, arbitrary, capricious, partial, oppressive:* 28 Cyc. 368; 48 S. C. 570; 118 U. S. 356; 28 Cyc. 350; 154 U. S. 362. *It is unconstitutional:* 118 U. S. 369; 114 Am. St. R. 804; 119 Id. 845; 78 Id. 526; 41 Id. 230; 123 Id. 33 and note; 117 N. W. 1012; 118 U. S. 356; 194 U. S. 371; 199 U. S. 562; 50 Am. R. 636.

*Mr. L. O. Patterson,* contra, cites: *General power to regulate stables:* McQuillin Mun. Or., sec. 450; 19 Ency. 430; Dillon, sec. 665; 35 L. R. A. 84; 10 Pac. 327; 13 Pac. 170; 16 Wall. 36; 38 L. R. A. 640. *City has the police power:* 53 S. C. 277; sec. 1999 Code 1902; 33 S. C. 64. *The power has been reasonably exercised:* 4 Strob. 306; 48 S. C. 583; 76 S. C. 12; 11 L. R. A. 446. *Ordinance violates no constitutional provision:* 113 U. S. 27; 118 U. S. 356; 177 U. S. 183; 194 U. S. 361; 12 Am. R. 694; 22 At. 266; 66 S. C. 202. *That petitioner has obtained a permit and done work thereunder does not affect it:* 47 Am. R. 326; Dillon, sec. 405; 2 Pars. Con. 674; 1 Hump. 240; 72 Pac. 970; 113 U. S. 703; 59 Am. R. 694; 26 Gratt. 83. *Court will not assume discrimination:* 11 L. R. A. 448; 27 L. R. A. 530; 2 McQuillin, sec. 703; Cooley Con. Lim. 221.

*Messrs. Cothran, Dean & Cothran,* also contra. See Appendix for citations.

September 10, 1912. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. The petitioner seeks to have an ordinance of the city of Greenville annulled, and to obtain

a writ of mandamus, directed to the city council, commanding that body to issue to him a license to open and operate a livery, feed and sales stable on his lot, on the corner of North and Laurens streets, in said city.

On October 5, 1911, petitioner paid $22,100 for the lot, for the purpose of building a stable thereon; and, while it was worth what he paid for it for other purposes, he would not have bought it, if he had known that he would not be allowed to use it for that purpose.

On October 6th, he applied to the city engineer, who is, *ex officio,* building inspector, and authorized to issue building permits, and obtained a permit to build his stable. At that time, so far as it appears from the record, there was no ordinance on the subject of location of stables in the city. The ordinance under which the building permit was granted related to the methods of constructing buildings and the kind of materials to be used, with a view to their structural safety and to the prevention of fires.

Having obtained the building permit, petitioner contracted with a builder, bought several hundred dollars' worth of building material, cut down some shade trees on his lot, had the foundation graded for his stable, and incurred other expenses in preparation for the building of his stables.

On October 25th, when the residents and owners of property in the immediate neighborhood had discovered his purpose, they objected and petitioned council to prohibit the opening of a stable at that place, because it was in the midst of a densely populated residence section of the city in which there was also situated a church and a hospital. Most active in pressing the objections of the neighboring citizens was Mr. W. E. Beattie, who was acting in the interest of his sister-in-law, whose residence adjoins petitioner's lot. Mr. Beattie is a member of the paving commission, which has the expenditure of large funds of the city, and, in that way, he is officially associated with the members of the council.

He is also on terms of social or business friendship with most if not all of them. He exerted what influence he could to secure the passage of the ordinance and the refusal of a license to the petitioner under it. He went so far as to give bond to save the city harmless in the matter of expense incurred in defending the ordinance, if it should be attacked, and employed his own attorney to assist the city attorney in this case. It is, therefore, alleged, as one of the grounds of attack, that the ordinance is void, because its adoption was procured by improper influence, and because, in adopting it, under such influence, the members of council perverted the power entrusted to them to be exercised for the public to the promotion of private interests.

On November 7th, the ordinance was adopted. For the purpose of testing its validity, petitioner immediately applied for a license to open a stable on his lot, which was refused in a formal resolution, which recites that the application had been considered in all its bearings, under the ordinance and with reference to the various matters mentioned in section 4 thereof, and that it was the sense of council that, under all the circumstances, it would not be for the best interests of the city to grant it.

In disposing of the questions before the Court, it will be necessary to consider only the first and fourth sections of the ordinance. As originally adopted, they read as follows:

Section 1. "That from and after this date, it shall be unlawful for any person, firm, company or corporation to open *and* conduct a livery stable, feed stable, sale stable or other similar institution within the city limits at any place, *at which a similar business has not been conducted immediately preceding the date of the passage of this ordinance,* without first applying to the city council and obtaining from said city council special permission to open *and* conduct said business at said place."

Section 4. "In considering and passing upon the question of granting permission to open and operate such livery

stable, feed stable, sale stable, or other similar institution, regard shall be had by said council to the proximity of said proposed stable or similar institution to shipping facilities; to the avoiding or prevention of danger to pedestrians in consequence of the use of the streets by large numbers of animals; to the presence or absence of densely populated residence neighborhoods; and to the question whether the proposed stable or similar institution is so near to churches, schools or other institutions as to prove injurious to them, and to the matter of protection against fire losses."

This proceeding was commenced on November 28th, and, on December 19th, after the issue herein had been joined and the case had been referred, for the purpose of having the testimony taken, at the suggestion of the city attorney, council amended the ordinance, presumably for the purpose of strengthening it against this attack. The amendment consisted in substituting "or" for italicized "and" in section 1, and striking out the italicized adjective sentence therein. Respondent was permitted to set up the amended ordinance in a supplemental return.

We notice first the contention that the ordinance is not within the legislative grant of power to the city. It is so well settled as to require no citation of authority that municipal corporations have and can exercise only their inherent powers and such as have been conferred upon them by the legislature in express terms, or by reasonable implication, and also that the grant of power will be strictly construed against the municipality. Even under these rules, ample authority for the ordinance is found in section 1999, volume I, Code 1902, which confers upon cities and towns "power and authority to make, ordain and establish all such rules, by-laws, regulations and ordinances respecting the roads, streets, markets, police, health and order of said cities and towns, or respecting any subject as shall appear to them necessary and proper for the security, welfare and convenience of such cities and towns,

or for preserving health, peace, order and good government within the same."

The allegation that the ordinance was adopted and the license was refused through the undue influence of Mr. W. E. Beattie over the members of council, exercised for the purpose of subserving private interests, and not for the protection of the public, is not sustained by the evidence. Private interests may be, and nearly always are, incidentally subserved in promoting the public good. But the members of council deny emphatically that their action was controlled by the influence alleged, and assert positively that they were governed solely by what they believed to be for the best interest of the community. Aside from this, we cannot inquire into the motives which induce legislative action. In a proceeding to annul an ordinance of the city of San Francisco, it was alleged that it was adopted on account of a feeling of antipathy to the Chinese residents of the city, but the Supreme Court of the United States said they could not inquire into the motives of the board of supervisors in adopting the ordinance, "except as they may be disclosed on the face of the acts, or inferable from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purpose they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactment. Their motives, considered as the moral inducements for their votes, will vary with the different members of the legislative body. The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile. And in the present case, even if the motives of the supervisors were as alleged, the ordinance would not be thereby changed from a legitimate police regulation, unless in its enforcement it is made to operate only against the class mentioned; and of this

there is no pretense." *Soon Hing* v. *Crowley,* 113 U. S. 703, 28 L. ed. 1145; Cool. Const. Lim. (7 ed.) 258. Whether an act or ordinance is within the power of the legislature or municipal corporation is a judicial question, but whether it is a wise and proper exercise of the power is for the legislative body to determine, and for their action they are responsible only to the people whom they represent.

We think the ordinance should be sustained as a valid and reasonable exercise of the police power. The place at which a thing is done may determine whether it is or is not a nuisance. Whether a livery stable is not a nuisance *per se,* when properly located, it would be a nuisance in some places, without regard to how it was built or kept, because of many objectionable features which are inevitably incident to its existence and operation. Its proper location, therefore, depends upon a variety of circumstances, which involve the exercise of judgment and discretion, when the matter is viewed from the standpoint of the public health, safety and comfort; and it is therefore, subject to municipal regulation. Dill. Mun. Corp., sec. 692; McQuil. Mun. Ord., sec. 450; 19 A. & E. Enc. L. (2 ed.) 430.

The contention that the ordinance is discriminatory and denies to petitioner the equal protection of the law cannot be sustained, notwithstanding it was adopted to meet his case. That was merely an incident. Its character in that respect must be judged from the ordinance itself. Upon its face, it does not appear to be discriminatory, nor does it appear that such will be the necessary result of its practical operation. While it was primarily aimed at petitioner, it applies to all others in similar circumstances, and it applies to all alike; and while it affords opportunity for unfair discrimination in its administration, that does not necessarily make against its validity. Unlike the ordinance condemned in *Yick Wo* v. *Hopkins,* 118 U. S. 356, 30 L. ed. 225, which conferred "a naked and arbitrary power to give or withhold consent, not only as to places, but as to persons,"

this ordinance vests in council "a discretion to be exercised upon a consideration of the circumstances of each case," which is a proper exercise of the police power. In *Fischer v. St. Louis*, 194 U. S. 361, 48 L. ed. 1018, the Supreme Court of the United States had under consideration an ordinance which prohibited the building of any dairy or cow stable in the city, and the maintenance of any then existing without consent of the municipal assembly. Fischer was convicted and fined for using stables which had been built before the passage of the ordinance. In response to his contention that the ordinance denied him the equal protection of the laws and deprived him of his property without due process of law, the Court said: "Defendant's main contention, however, is that, by vesting in the municipal assembly the power to permit the erection of dairy and cow stables to certain persons, a discrimination is thus declared in favor of such persons, and against all other persons, and the equal protection of the laws denied to all the disfavored class. The power of the legislature to authorize municipalities to regulate and suppress all such places or occupations as, in its judgment, are likely to be injurious to the health of its inhabitants, or to disturb people living in the immediate neighborhood by loud noises or offensive odors, is so clearly within the police power as to be no longer open to question. The keeping of swine and cattle within the city, or designated limits of the city, has been declared in a number of cases to be within the police power. The keeping of cow stables and dairies is not only likely to be offensive to neighbors, but it is too often made an excuse for the supply of impure milk from cows which are fed on unhealthful food, such as refuse from distilleries, etc. (Citing cases.) We do not regard the fact that permission to keep cattle may be granted by the municipal assembly as impairing, in any degree, the validity of the ordinance, or as denying to the disfavored dairy keepers the equal protection of the laws. Such discrimination might well be made where one person desired

to keep two cows, and another fifty; where one desired to establish a stable in the heart of the city, and another in the suburbs; or, where one was known to keep his stable in a filthy condition, and the other had established reputation for good order and cleanliness. Such distinctions are constantly made the basis for licensing one person to sell intoxicating liquors, and denying it to others. The question in each case is whether the establishing of a dairy and cow stable is likely, in the hands of the applicant, to be a nuisance or not to the neighborhood, and to imperil or conduce to the health of its customers. As the dispensing powers must be vested in some one, it is not easy to see why it may not properly be delegated to the municipal assembly which enacted the ordinance. Of course, cases may be imagined where the power to issue permits may be abused, and the permission accorded to social or political favorites and denied to others, who, for reasons totally disconnected with the merits of the case, are distasteful to the licensing power." To the same effect see *Liberman* v. *Van De Carr,* 199 U. S. 552, 50 L. ed. 305; *California Reduction Co.* v. *Sanitary Reduction Works,* 199 U. S. 306, 50 L. ed. 204; *Gundling* v. *Chicago,* 177 U. S. 183, 44 L. ed. 725.

The fact that petitioner had been granted a permit to build and had incurred considerable expense preparatory to building cannot avail against the ordinance. "As the State may not, by any law or contract, surrender or restrict any portion of the sovereignty which it holds in sacred trust for the public weal, so a municipality, as a governmental agency, acting and bound always to act as trustee of the power delegated to it, may not, by contract, license or by-law, surrender or restrict any portion of the police power conferred upon it." 28 Cyc. 696; *Knoxville* v. *Bird,* 12 Lea, 121, 47 A. R. 326. These views do not conflict with the principles decided in *Dobbins* v. *Los Angeles,* 195 U. S. 222, 49 L. ed. 169. That case was decided on a demurrer to the complaint in which facts were

alleged, which were admitted by the demurrer, which showed that the ordinance was not a *bona fide* exercise of the police power for the protection of the public, but that it was an arbitrary and capricious attempt to exercise that power to protect an existing gas company in the enjoyment of a monopoly; and for that reason, the ordinance was held to be void. But the Court distinctly recognizes and affirms the principles announced in *Fischer* v. *St. Louis,* in the following language: "It may be admitted as being a correct statement of the law as held by the California Supreme Court that, notwithstanding the grant of the permit, and even after the erection of the works, the city might still, for the protection of the public health and safety, prohibit the further maintenance and continuance of such works, and the prosecution of the business, originally harmless, may become, by reason of the manner of its prosecution or a changed condition of the community, a menace to the public health and safety. In other words, the right to exercise the police power is a continuing one, and a business lawful today may, in the future, because of the changed situation, the growth of population, or other causes, become a menace to the public health and welfare, and be required to yield to the public good."

The power of the Court to compel a municipal corporation to perform a purely ministerial duty is not questioned. Although it should be a matter resting in discretion, the Court would, nevertheless, compel its performance, if its refusal should be based upon a conclusion which is without foundation in fact—in other words, if the refusal is arbitrary or capricious. *Mauldin* v. *Matthews,* 81 S. C. 414, 62 S. E. 695. For, "though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in simliar circumstances, material to their rights, the denial of equal justice is still within

the prohibition of the Constitution." *Yick Wo* v. *Hopkins, supra; Kirk* v. *Board,* 83 S. C. 372, 65 S. C. 387. But the facts of this case fall short of making it appear that the license was arbitrary or capriciously refused. Numerous circumstances appear in the evidence upon which the discretion to refuse it might have been reasonably exercised.

The petition is therefore dismissed.

Note.—*This case was heard before the election of Mr. Justice Watts and Mr. Justice Fraser, but, by consent of counsel, it was agreed that it should be submitted to the full Court after the election and qualification of the new Justices.*

7        Petition for rehearing dismissed by formal order December 2, 1912.