12968

PENDARVIS v. CITY OF ORANGEBURG

(154 S. E., 756)

*Messrs Simms & Simms,* for appellants,

*Messrs. A. J. Hydrick* and *William C. Wolfe,* for respondent,

August 28, 1930.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The petitioner, Emma J. Pendarvis, as a taxpayer of the City of Orangeburg, commenced this action in the Court of Common Pleas for Orangeburg County, against the City of Orangeburg, and the members of the City Council of said City, November, 1927, by service of a rule issued by his Honor, Judge S. W. G. Shipp, requiring the City of Orangeburg and the members of the City Council to show cause why a writ of mandamus should not be issued requiring it and them to grant a permit to the petitioner to construct a filling station upon her property in the said City. Return to the rule was made and the matter heard by his Honor, Judge Shipp, December 8, 1927, who issued an order of reference, referring the proceeding to the master of Orangeburg County, to take such testimony in the cause as the parties might desire to offer and to report the same to the Court. From the said order and the ruling of his Honor in the cause, the respondents, in the Court below (appellants in this Court), have appealed to this Court, upon exceptions which raise the questions we shall consider.

In order to get a clear understanding of the issues presented to his Honor, Judge Shipp, it is necessary to refer to petitioner's petition in the cause, which reads as follows:

"PETITION

"The petition of the aforesaid petitioner would respectfully show unto this Court:

"1. That she is a citizen and resident of the City of Orangeburg, in the County of Orangeburg, in said State.

"2. That the City of Orangeburg is a Municipal Corporation in Orangeburg County in the said State; and is capable of being sued and to sue.

"3. That the respondents, R. H. Jennings, as Mayor, and A. C. Watson and John M. Siffly as Councilmen, compose the City Council of the City of Orangeburg.

"4. That the petitioner is the owner in fee simple and is now in possession of the following described real estate:

"All that certain lot situate on the corner of Broughton and Glover Streets in said City, bounded on the North by lot of Mrs. Bultman; on the East by lot of B. Frank Haigler, Esq., on the South by Glover Street; and on the West by Broughton Street, measuring on Broughton Street about eighty (80') feet and running back on Glover Street and on the opposite side line one hundred and eighty-five (185') feet, more or less.

"5. That she desires to erect a building upon the said property and to conduct therein what is commonly known as a filling station, wherein only merchandise such as gasoline, oil and automobile accessories will be sold; but that no garage or repair shop whatsoever is intended to be conducted as a part of the said business.

"6. That she has applied to the City of Orangeburg for a permit to construct a building upon the said premises wherein to conduct such business therein upon payment of the City license provided for a business of like nature.

"7. That the City Council, upon due application, has failed or refused to grant such permission, as it ought to do, and as it has done to various other persons, firms and corporations in the said City who are now engaged in a like business.

"8. That the City of Orangeburg and its aforesaid City Council ought to issue such permit as a ministerial duty plainly to be performed by it; and that, even if the granting of such a permit or permission to erect such building to conduct and maintain such a business as aforesaid therein is a matter upon which the said City and its aforesaid City Council have a right to exercise a discretion in granting or refusing to grant, yet there is no valid or sound reason either as a matter of fact or a matter of law, why such permit or permission should not be granted to her; so that the failure or refusal to grant such permit unto the petitioner constitutes a violation of her legal rights, and will result if persisted in in great loss, damage and injury to her in

her aforesaid property rights, and will prevent her from using and enjoying her property aforesaid as she has a right to do under the laws of this State and of the United States, she being also a citizen of the United States of America and being entitled to the protection and enjoyment of all of the rights of such a citizen, and claims and invokes the protection of all Federal laws in respect to such rights.

"9. That she has no other plain or adequate remedy at law, and is compelled to apply to this Court in this manner in order to enforce and protect her rights against such threatened loss and damage and in order to enjoy her rights in her property aforesaid.

"10: That she desires such permit or permission to use and enjoy her property both for herself and for her heirs, grantees and assigns.

"Wherefore, she prays this Court that a writ of mandamus be issued requiring the City of Orangeburg and its aforesaid City Council to grant and issue unto her a permit to erect such filling station, and to be allowed to conduct a business therein as aforesaid, both for herself and her heirs, grantees and assigns, and she will ever pray, etc."

It is thus seen that the only material matters alleged by petitioner, after alleging that she is the owner of the lot of land described in the petition are that she desires to operate a filling station on this lot; that she has made application to the City Council for a license or permit to conduct such business, and that the City Council refused to grant the petitioner such permission without having any valid or sound reason for such refusal, in violation of her legal rights, and to her great damage; that the petitioner desires the permit applied for "to use and enjoy her property for herself and for her heirs, grantees and assigns." The petitioner does not allege any specific facts in connection with the refusal to grant her the permit sought. In this connection she simply alleges, in the first place, that the City and the City Council

ought to issue such permit "as a ministerial duty plainly to be performed by it," and, in the second place, alleges that "even if the granting of such a permit or permission to erect such building to conduct and maintain such a business as aforesaid therein is a matter upon which the said City and its aforesaid City Council have a right to exercise a discretion in granting or refusing to grant, yet there is no valid or sound reason either as a matter of fact or matter of law, why such permit or permission should not be granted to her. * * *" The City and City Council in making return to the rule set forth, in detail, the facts upon which their action was based when the permit sought by petitioner was refused, which return was duly verified; and, in addition, attached to the return affidavits of prominent physicians, residing within said City, to the effect that the petitioner's said lot is located in one of the best residential sections of the City and "is within the hospital zone as established by the said City of Orangeburg"; that the said lot is near the Orangeburg Hospital, the hospital being on the south side of West Glover Street, and the said lot of petitioner being on the north side of the West Glover Street, in the block between South Broughton Street and South Middleton Street; that many patients are taken to the said hospital, the majority of which "are operative cases and after an operation and during the convalescent period they are necessarily very nervous and it is absolutely necessary that their surroundings be as quiet as possible"; and that the erection and operation of a filling station so close to the said hospital, as the petitioner asked permission to establish and operate, would cause automobiles and heavy trucks to congregate in large numbers at said point, near the hospital, and the stopping and starting of the same would produce much noise and confusion, which would seriously affect the patients in the hospital; that the noise and confusion incident to the stopping and starting of the automobiles and heavy trucks at the station would start at an early hour and con-

tinue until a late hour at night, which would greatly interfere with and affect the patients in the hospital.

The return to the rule was not traversed, and, the facts alleged therein must be considered as admitted by the petitioner. *Bryan v. Auditing Board,* 94 S. C., 43, 51, 77 S. E., 736. Therefore, in our opinion, there existed no reason for ordering a reference in the case, but, as we view the case, it was incumbent upon his Honor, the Circuit Judge who heard the matter, to decide the case upon the record before him, and that his Honor erred in ordering a reference for taking testimony.

The next question presented for our consideration is, Were the appellants, under the record, entitled to have the rule dismissed?

After the time of filing with the City Council the petitioner's application for the permit desired, and at the time the resolution was passed refusing to grant the application, there was of force the following ordinance:

### "Ordinance

"An Ordinance to Require Special Permission to Open or Operate Livery Stables, Feed Stables, Sales Stables, Gasoline Filling Stations, Garages, or other Similar Institutions Within the City of Orangeburg. S. C.

"Be it ordained by the Mayor and Councilmen of the City of Orangeburg, in Council assembled and by authority of the same:

"Section I. That from and after this date it shall be unlawful for any person, firm, company or corporation to open or conduct a livery stable, feed stable, sales stable, gasoline filling station, garage, or other similar institution within the City limits at any place, without first applying to the City Council and obtaining from said City Council special permission to open or conduct said business at said place.

"Section II. In considering and passing upon the question of granting permission to open or operate such livery

stable, feed stable, sales stable, gasoline filling station, garage, or other similar institution, regard shall be had by said Council as to how the same shall be built or kept, to the avoiding or prevention of danger to pedestrians in consequence of the use of said institution, to the presence or absence of densely populated residence neighborhoods, to the question whether the proposed institution is so near to churches, schools, hopsitals or other institutions as to prove injurious to them, to the matter of protection against fire losses, and to the general security, welfare, convenience, health, peace, order and good government of the city.

"Section III. That any person, firm, company, or corporation who shall violate the provisions of this ordinance shall, upon conviction therefor before the Recorder or Acting-Recorder, be punished by a fine not exceeding One Hundred ($100.00) Dollars, or imprisonment for a period of not longer than thirty (30) days for each day said ordinance is violated."

The petitioner does not question the validity of this ordinance, and practically concedes that in passing upon her application for the permit sought it was the duty of the City Council not to grant the same, unless it came within the purview of this ordinance and was not in violation of its purpose and intent. Therefore, in passing upon the application, it was incumbent upon the City Council to inquire into the facts and to refuse to grant the permit unless warranted under the facts, considered in connection with the provisions contained in the ordinance. Under Section 2 of the ordinance in question it is plainly stipulated that in passing upon the question of granting permission to open or operate a filling station regard shall be had to the presence or absence of densely populated residence neighborhoods; also to the question whether the same is to be located so near *hospitals as to prove injurious to them,* "and to the general security, welfare, convenience, *health,* peace, order and good government of the City." (Italics added.)

The ordinance to which we have referred was passed November 18, 1925. The petition for the permit was presented to the City Council August 26, 1927, and the permit was asked for under this ordinance. It further appears from the record before us that the petitioner requested to be allowed a hearing on the petition and to be granted the privilege of submitting evidence at such time to sustain her position, in case there should be objection to granting the permit. The City Council granted to petitioner this privilege, but it does not appear from the record in the case that the petitioner ever offered any evidence, although the petitioner's counsel appeared before the City Council in her behalf and although the matter was held open from Aug. 26, 1927, to November 19, 1927, and a public hearing was held in the matter. While the matter was pending petitions opposed to the granting of the permit sought by petitioner herein were presented to the City Council, and also affidavits, all of which were duly considered by the City Council, in connection with the petition of the petitioner herein. One of the petitions in opposition was signed by a number of citizens of said City owning and occupying residential buildings situated near the lot of petitioner on which she desired to locate the filling station, and substantial grounds were stated by the several citizens why the permit should not be granted. There was also presented to the City Council, in opposition to granting the proposed permit, a petition in the interest of the Orangeburg Hospital, supported by affidavits of leading surgeons of the City, setting forth that a filling station on the lot in question would greatly injure said hospital and the patients therein, to which matter we have already called attention herein. As stated, it is shown that the hospital is very near the lot in question, and from the opposing petition, presented in the interest of the hospital, and the affidavits in support of the same, it appears that a large number of patients are handled at said hospital, it being the only hospital in that section of the country, and that a majority of such patients

are taken to this hospital to be operated on; that a great number of people are operated on daily at this hospital, and "after the operations it is necessary for the well-being of the said patients that they continue in the said hospital for variable periods of time, and while remaining in the said hospital to recover their health and recuperate from the operations, it is necessary that they enjoy complete relaxation, undisturbed by noise as far as it is humanly possible. As stated, it further appears from the record in the case that the operation of a filling station on the lot in question would cause many automobiles and heavy trucks to stop and start at said place and produce much noise, and greatly increase the noise around said hospital, and that such noise would begin at an early hour in the morning and continue through the day and until a late hour at night, that the same would greatly injure the hospital patients in said hospital, be a source of annoyance to the patients "and render their recovery more difficult and uncertain." In addition to the proof in the record, we take it that the members of the City Council from actual knowledge knew the situation of the lot in question and its location in respect to the hospital, and had knowledge of the injury that would result to the patients at the hospital. As citizens of the City of Orangeburg the members of the Council had an opportunity to view in person the entire situation. The return to the rule, which included a copy of the resolution of the City Council, throws considerable light on the action of the City of Orangeburg and its Council, and for that reason we quote the same, as follows:

"RETURN

"To His Honor S. W. G. Shipp, of the Court aforesaid:

"The return of the respondents above named respectfully shows unto the Court:

"1. That they compose the City Council of the City of Orangeburg, S. C.

"2. That on the 18th day of November, 1925, the City

Council passed an ordinance requiring all persons who desired to open or conduct filling ́stations and other similar business within the City limits at any place to obtain from said Council special permission to open or conduct said business.

"3. That the said ordinance, a certified copy of which is hereto attached and made a part of this return, provides that in considering and passing upon the question of granting permission to open or operate such gasoline filling station or other similar institution, regard shall be had by the Council to how the same shall be built or kept, to the avoiding or prevention of danger to pedestrians in consequence of the use of said institutions, to the presence or absence of densely populated neighborhoods, to the question of whether the proposed institution is so near to churches, schools, hospitals, or other institutions as to prove injurious to them, and the matter of protection against fire losses and the general security, welfare, convenience, health, peace, order and good.government of the said City.

"4. That on August 26, 1927, Mr. A. J. Hydrick, Esq., presented to the City Council the petition of Emma J. Pendarvis, a certified copy of which petition is hereto attached and made a part of this return, in which the petitioner petitioned the City Council that she or her grantees be granted the right and privilege, under the ordinances of the City .Council of Orangeburg, to construct, maintain and operate a gasoline filling station on her property described in the petition; that in the said petition she asked, in the event that there be objection to the granting of her petition, that she be allowed a hearing upon said issue and the privilege at such time of submitting evidence to sustain her position.

"6. Upon receiving and reading the aforesaid petition, the Mayor, speaking for the Council, announced that the matter would be taken up at the next regular meeting of the City Council; that at the next regular meeting of the said

Council, the petitions of Dr. C. A. Mobley and various citizens were filed with the City Council; that the said Council at the request of Messrs. A. J. Hydrick and Wm. C. Wolfe, attorneys for petitioner, agreed to grant a hearing on the petition in accordance with the petition, and set a special meeting on September 14, 1927, for the purpose. That prior to the adjournment of the Council, it was informed that Mr. Hydrick would be out of the City on the said date; that thereafter these respondents have held themselves ready to assemble as the City Council for the purpose of granting such hearing at any time convenient to attorneys for the petitioner in these proceedings and the attorney for the adverse petitions filed with the City Council, a certified copy of which adverse petitions are hereto attached and made a part of this return.

"7. That thereafter your respondents, constituting the City Council of Orangeburg, S. C., held a special meeting for the purpose of receiving testimony and hearing argument on the issue raised by the petitions before it; that the petitioner, Emma J. Pendarvis, was represented by Messrs. A. J. Hydrick and Wm. C. Wolfe, attorneys at law, and the counter-petitioners were represented by Mr. P. F. Haigler, attorney at law; that a number of affidavits were filed at the said hearing and some verbal testimony taken; that no objections of any kind were made as to the manner or conduct of the said hearing and that it was agreed by counsel appearing before the Council that the testimony of both sides be presented in this manner; that thereafter on the 19th day of November, 1927, at a special meeting of the City Council held for the purpose the following resolution was passed, which resolution was delivered to the attorneys of the petitioner Emma J. Pendarvis:

"RESOLUTION

" 'Whereas, Emma J. Pendarvis, by her petition bearing date the 26th day of August, 1927, applied to the City

Council of Orangeburg, S. C., for a permit to erect and operate a filling station on her premises located on the corner of South Broughton and West Glover Streets in the said City and

" 'Whereas, after consideration of the petition of Dr. C. Council of Orangeburg, S. C., held a public hearing for the purpose of receiving the petitions of those opposed to the granting of the said permit and at the said hearing, counter-petitions were filed by (a) Dr. C. A. Mobley, surgeon and operator of the Orangeburg Hospital, and (b) by various property owners in the neighborhood of the location of the proposed filling station and,

" 'Whereas, after consideration of the petition of Dr. C. A. Mobley and certain affidavits filed in support thereof, together with the affidavits presented by the original petitioner, the City Council is convinced that it should refuse to grant the permit requested by the said Emma J. Pendarvis because the location of the proposed filling station is so near to the Orangeburg Hospital as to prove injurious to it and endanger the health of its patients, and

" 'Whereas, having decided to refuse the said permit on this account, it becomes necessary for the City Council to consider the petition of others objecting to the erection of the said filling station on other grounds, but the Council will pass on them whenever it becomes necessary in the consideration of this or some other matter.

" 'Now, therefore, be it resolved by the Mayor and Councilmen of the City of Orangeburg, in council assembled and by authority of the same, that the City Council of Orangeburg refuses to grant a permit to Emma J. Pendarvis, her heirs and assigns, to construct and operate a filling station on her property hereinabove referred to.'

"8. That your respondents as the City Council of Orangeburg, S. C., in reaching their decision were honest, conscientious and sincere in their effort to carry out the duties imposed upon them by the ordinance of the said City passed

on the 18th day of November, 1925; that while they were and are reluctant to refuse to grant the permit sought by the petitioner Emma J. Pendarvis, for the reasons set out in the resolution quoted above, they were impelled so to do by a consideration of the affidavit of Dr. C. A. Mobley, a copy of which affidavit is hereto attached and made a part of this ordinance and the identical affidavits of Doctors G. M. Truluck, H. T. Schiffley, Geo. H. Walter, and C. I. Green, all of whom are reputable practitioners in the said City and known to this Council as citizens of the highest type and skilled in their profession; a copy of the affidavit signed by Dr. G. M. Truluck, which is identical with the affidavit signed by the other three physicians is hereto attached and made a part of this return.

"9. That your respondents, previous to receiving the petition of the said Emma J. Pendarvis, to-wit, on the 10th day of June, 1927, received an application from Messrs. Walker & Bowman, dealers in gasoline and oil in the said City, for permission to erect a filling station on the property of the petitioner in this proceeding; and, on that date, refused the application as will be seen from the extracts of the minutes of the City Council for said date which are hereto attached and made a part of this return; also attached and made a part of this return are extracts from the minutes of the City Council for meetings held August 26 and September 9, both of which extracts relate to the petition of the said Emma J. Pendarvis to the said City Council which extracts are hereto attached and made a part of this return.

"10. In conclusion, your respondents, constituting the City Council of Orangeburg, S. C., wish to assure your Honorable Court that they have not acted in this matter without careful consideration of the factors involved and to express their conviction that the action of the Council was a reasonable exercise of the discretion vested in it by the ordinance of the City of Orangeburg, which they were and are compelled to obey.

"Wherefore, these respondents pray that this Court dismiss the prayer of the petitioner herein and do not grant the writ of mandamus prayed for."

In our opinion it was not a plain ministerial duty on the part of the City of Orangeburg and its City Council to grant the permit in question; and, further after a most careful examination of the record of the case we are satisfied that there was no abuse of discretion in refusing to grant the permit. Furthermore, we are convinced that the City Council properly exercised its discretion in refusing to grant the permit; that the return to the rule was sufficient and the rule should have been dismissed. In support of our position we call attention to the following authorities: 38 C. J., 578, 582, 593, 594, 600 and 698, 18 R. C. L.. 119; *State v. Fuller,* 18 S. C., 246; *Douglass v. City Council of Greenville,* 92 S. C., 374, 75 S. E., 687, 49 L. R. A. (N. S.), 958; *Atlantic C. L. Ry. v. Railroad Commission,* 89 S. C., 472, 72 S. E., 18; *State v. Rice,* 32 S. C., 97, 10 S. E., 833; *Alston v. Board of Health of City of Charleston,* 93 S. C., 553, 77 S. E., 727.

The appeal is sustained, the petition for a writ of mandamus refused, and the rule dismissed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE COTHRAN dissents.

On petition for rehearing.

*Per Curiam.*

Rehearing refused and petition dismissed.

MR. JUSTICE COTHRAN (dissenting): The dissenting opinion heretofore filed by me· is withdrawn, and this opinion is submitted as a dissenting opinion to the opinion of the majority of the Court, and as a dissenting opinion to the proposed order dismissing the. petition for a rehearing.

I respectfully suggest that it does not appear to me to have been apprehended by a majority of the Court, that the appeal in this case involves the sole issue, *a procedural ques-*

*tion simply,* whether Judge Shipp committed error in referring the case to the master, to take and report the testimony upon the issues presented by the petition and return. He either had, or he did not have, that authority; if he had the appeal must be dismissed; if not, the case is still upon the docket of Orangeburg County for trial upon the issues presented; it cannot rightly *be dismissed* upon the ground of error in referring the case, when there has been no decision upon the merits in the Court below, and of course no appeal from such a decision.

As a matter of fact, there could have been no decision by Judge Shipp upon the merits if he had attempted to make one, for the case was pending in Orangeburg County, and the application for a reference was to him in Berkeley County, where, under the cases following, he was without jurisdiction to decide the case upon the merits: *La Motte v. Smith,* 50 S. C., 558, 27, S. E., 933; *State ex rel. Cunningham v. Williams,* 52 S. C., 416, 29 S. E., 814; *State ex rel. Kirven v. Scarborough,* 70 S. C., 288, 49 S. E., 860.

So that there was not only no decision upon the issues presented (upon the merits of the case), but, at the time and place, and by the particular Circuit Judge who was neither the resident nor the presiding Judge in the County of Orangeburg, none could have been made.

The judgment of this Court presents the anomaly of a decision upon the merits, when there has been no such decision by the Circuit Court, and of course no appeal therefrom.

The petitioner owned a lot in the City of Orangeburg; she wished to make, in her judgment, the most profitable use of it by erecting, or permitting to be erected by others, a filling station upon it.

On account of the ordinance set forth in the opinion of Mr. Justice Carter, it became necessary for her to apply to the City Council for permission to erect the filling station, which she did.

Upon receiving her application for the permit, the matter was brought before the Council, and, after hearing affidavits on both sides, the Council passed a resolution refusing the permit, basing their refusal entirely upon the affidavits of physicians to the effect that the installation would prove injurious to patients in the hospital.

The petitioner then instituted the present proceeding, by a petition in the Court of Common Pleas, for a writ of mandamus, to compel the City Council to grant the permit, upon the ground that the action of the Council in refusing her relief was arbitrary and without good cause; "that there was no valid or sound reason for such refusal and that the same constituted a violation of her legal rights and will result in great loss to her in her aforesaid property rights and will prevent her from using and enjoying her property as she has a right so to do under the laws of this State and of the United States of America."

The petition was served upon the City Council, and with it was an order of his Honor, Judge Shipp, signed at St. Matthews, requiring the respondents in that proceeding, to show cause before him, at Moncks Corner, in the County of Berkeley, on a day named (December 8, 1927?), why the writ should not be granted as prayed for.

To this order or rule to show cause, the respondents, in that proceeding, made a return, in which they relied upon the ordinance referred to, which empowered them to refuse the permit when in their judgment the installation of the proposed filling station would be so near to the City Hospital "as to prove injurious to it." I assume, though it does not distinctly so appear in the transcript, that along with, and as parts of the return, were a resolution of the City Council refusing the permit, upon the ground stated, and certain affidavits of physicians and others, sustaining the ground of refusal.

The return stated that the Council were "honest, conscientious and sincere in carrying out their duties under the

ordinance quoted above, and that while they were reluctant to refuse the permit requested they were impelled to do so on account of the affidavit, submitted by Dr. C. A. Mobley and Doctors G. M. Truluck, H. T. Schiffley, George H. Walter, and C. I. Green, all reputable practitioners and known to them as citizens of the highest type and skilled in their profession."

It will be observed that the resolution, with the supporting affidavits was passed and was used in the refusal of the request for the permit, after the hearing before the City Council. They were irrelevant and hearsay in support of the return.

It does not appear that the respondents in that proceeding have ever filed an answer to the petition for the writ. By common consent, however, it appears that the return has been treated as an answer.

The hearing of the rule then came up for hearing (I assume on December 8, 1927, as that is date of the order of Judge Shipp), before Judge Shipp who signed an order of reference as follows:

"This matter having come before me upon return to a rule heretofore issued requiring the respondents to show cause why a writ of mandamus should not be issued requiring it and them to grant a permit to the respondent to construct a filing station upon her property in said City; *and it appearing that such return traverses the petition and raises issues of fact;* so now, upon consideration thereof and upon motion of petitioner's counsel, it is

"Ordered that this proceeding be and hereby is referred to Edward C. Mann, Esq., Master of Orangeburg County, to take such testimony therein as the parties may desire to offer; and to report such testimony to this Court with all convenient speed."

From this order the respondents in that proceeding have appealed.

It will be noted that in the order of his Honor, Judge Shipp, he held that the return of the City Council *traversed the petition, and "raised issues of fact."*

The petitioner alleges that the property belonged to her; a fact not disputed; the title and possession carried the right to a reasonable use of the property, consistent with the laws of the land; she had the right therefore, *prima facie,* to establish a filling station upon it; a right, however, which might be defeated by a showing, on the part of the City Council, that the proposed occupation would violate the terms of the ordinance. She alleges also that the refusal of the permit was without any valid or sound reason and destructive of her property rights.

If those allegations were not sufficient to apprise the City Council of the position taken by the petitioner, their remedy was clear, by motion, to make more definite and certain. They chose not to do this, but to meet the petitioner upon common battle ground, without further detail, by attempting to show that the operation of the station would be prejudicial to the health and comfort of the patients in the hospital. They admit that they were controlled entirely by the opinions of the physicians upon this point, opinions that might or might not be justified by the facts. I do not suppose that any one would contend that a filling station was a nuisance *per se*. It may be or become so by reason of the methods of operation or its location under peculiar conditions. Clearly that presents an issue of fact.

The law seems clear that, where there are issues of fact in the case, the Circuit Judge may take the testimony and decide the issues or refer the matter to a referee either to pass upon all issues of fact and law or to take the testimony and report it for his decision.

In 18 R. C. L., 355, it is said: "But while there may be a few authorities to the contrary, the general rule in the absence of statute is that proceedings in mandamus are not within the constitutional provision securing the right to trial

by jury, and hence that neither party can demand as of right a jury trial in such a proceeding, but that it is discretionary with the Court, after issues of fact have been joined by the pleading, to decide such issues itself, or to order them to be tried before a jury or before a referee." That was the practice adopted in *State v. Mayor, etc., of City of Columbia,* 22 S. C., 582.

Another objection that I have to the conclusion of the majority in this case is that it is proposed to deprive this woman of a legitimate use of her property with little evidence as to the situation, the distance from the filling station to the hospital, the exposure, the noise, the effect upon patients and other considerations that would justify denying to the petitioner at least her *prima facie* rights. Some tribunal, the Circuit Court first, should decide the issue with all the facts before it. Up to this moment no tribunal has decided that the petitioner's property is a nuisance. If there be no good and valid reason for doing so, the taking would be arbitrary and capricious.

I do not think that there can be a question as to the authority of a municipality, in the exercise of its police power, to adopt an ordinance regulating the location of certain establishments, which, though not nuisances *per se,* may be or become such by reason of the particular location and the immediate injury to citizens thereby.

It appears, too, as well settled as the foregoing proposition, that "The power of the Legislature to authorize municipalities to regulate and suppress all such places or occupations as, *in its judgment,* are likely to be injurious to the health of its inhabitants, or to disturb people living in the immediate neighborhood by loud noises or offensive odors, is so clearly within the police power as to be no longer open to question. * * * As the dispensing powers must be vested in some one, it is not easy to see why it may not properly be delegated to the municipal assembly which enacted the ordinance." *Fischer v. St. Louis,* 194 U. S., 361, 24

S. Ct., 673, 48 L. Ed., 1018, quoted with adoption by this Court in *Douglass v. City Council*, 92 S. C., 374, 75 S. E., 687, 689, 49 L. R. A. (N. S.), 958. At the same time the Court in the *Douglass case* said: "Although it should be a matter resting in discretion, the Court would nevertheless compel its performance, if its refusal should be based upon a conclusion which is without foundation in fact—in other words, if the refusal is arbitrary or capricious. *Mauldin v. Matthews*, 81 S. C., 414, 62 S. E., 695, 128 Am. St. Rep., 919."

If, as alleged in the petition, there was under the circumstances no valid or sound reason on the part of the City Council for refusing the permit, an issue joined by the allegations of the return, the refusal was "arbitrary and capricious," in the language of the *Douglass case*. *That issue could not possibly be solved in an appeal from the order of reference.*

In *Symmonds v. Novelty Cemetery Ass'n of Knox County* (Mo. App.), 21 S. W. (2d), 889, the Court held, quoting syllabus: "Use of property will not be restrained as nuisance unless use is *ipso facto* nuisance or facts are charged showing it must become one."

If, as alleged in the petition, there was no valid or sound reason for refusing the permit, then the application of the ordinance to the particular petitioner was unreasonable, a sufficient ground in itself to entitle the petitioner to relief.

I concede that the ordinance is valid upon its face; that being so, the burden would fall upon the petitioner to show a state of facts which would render its application to her unreasonable.

In 2 Dillon M. C. (5th Ed.), § 591, it is said: "When the ordinance is within the grant of power conferred upon the municipality, *the presumption is* that it is reasonable, unless its unreasonable character appears upon its face. But the Courts will declare an ordinance to be void because unreasonable *upon a state of facts being shown* which makes

it unreasonable. If the ordinance is not inherently unfair, unreasonable or oppressive, the person attacking it must assume *the burden of affirmatively showing* that as applied to him it is unreasonable, unfair and oppressive. And an ordinance general in its scope may be adjudged reasonable as applied to one state of facts and unreasonable when applied to circumstances of a different character."

The operation of a filling station is legitimate; there is no business establishment that compares with them in attractiveness and maintenance; their operation is accompanied by the least degree of noise except the stalling of automobiles driven in for service; they are established in business and resident sections everywhere without complaint or objection. I do not feel that the ban of a City Council acting upon the opinions of others should be placed upon them in the absence of a judicial determination that they constitute a nuisance in the particular case.

The City relies upon the legal position that, as the petitioner did not traverse the return of the City, she is concluded by the statements of fact contained in the return. The case of *Bryan v. Auditing Board,* 94 S. C., 43, 77 S. E., 736, 738, is relied upon as sustaining this position. In that case the Court did say that "the return was not otherwise traversed, and the other facts therein alleged must therefore be considered as admitted by the relator." Section 796 of the Code of Civil Procedure 1922, however, specifically gives the petitioner the privilege of traversing the return, but it does not require him to do so. All that the petitioner could accomplish by traversing the return would be to join issue with the respondent as to such facts, and his Honor, the Circuit Judge, has held that without such traverse the parties were at issue upon the facts alleged in the petition and denied by the return.

I think, therefore, that the order of Judge Shipp should be affirmed and necessarily that the petition for a rehearing should be granted.