SUPERIOR FILMS, INC. *v.* DEPARTMENT
OF EDUCATION OF OHIO, DIVISION
OF FILM CENSORSHIP, HISSONG,
SUPERINTENDENT.

NO. 217.

Argued January 6, 1954.—Decided January 18, 1954.

*John C. Harlor* argued the cause for appellant in No.
217. With him on the brief were *F. J. Wright* and
*Michael Gesas*. *Earl F. Morris* was also of counsel.

*Florence Perlow Shientag* argued the cause for appellant in No. 274. With her on the brief was *Philip J.
O'Brien, Jr.*

*C. William O'Neill*, Attorney General of Ohio, argued
the cause for appellee in No. 217. With him on the
brief were *Robert E. Leach*, Chief Counsel, and *Gwynne
B. Myers*, Assistant Attorney General.

*Charles A. Brind, Jr.* argued the cause for appellees in
No. 274. With him on the brief were *Nathaniel L. Goldstein*, Attorney General of New York, *Wendell P. Brown*,
Solicitor General, and *Ruth Kessler Toch*, Assistant
Attorney General.

Briefs of *amici curiae* supporting appellant in No. 217
were filed by *Sidney A. Schreiber* and *Philip J. O'Brien,
Jr.* for the Motion Picture Association of America, Inc.

et al.; and by *Morris L. Ernst* for the National Council on Freedom from Censorship, a Committee of the American Civil Liberties Union.

PER CURIAM.

The judgments are reversed. *Joseph Burstyn, Inc.* v. *Wilson,* 343 U. S. 495.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK agrees, concurring.

The argument of Ohio and New York that the government may establish censorship over moving pictures is one I cannot accept. In 1925 Minnesota passed a law aimed at suppressing before publication any "malicious, scandalous and defamatory newspaper." The Court, speaking through Chief Justice Hughes, struck down that law as violating the Fourteenth Amendment, which has made the First Amendment applicable to the States. *Near* v. *Minnesota,* 283 U. S. 697. The "chief purpose" of the constitutional guaranty of liberty of the press, said the Court, was "to prevent previous restraints upon publication." *Id.,* p. 713.

The history of censorship is so well known it need not be summarized here. Certainly a system, still in force in some nations, which required a newspaper to submit to a board its news items, editorials, and cartoons before it published them could not be sustained. Nor could book publishers be required to submit their novels, poems, and tracts to censors for clearance before publication. Any such scheme of censorship would be in irreconcilable conflict with the language and purpose of the First Amendment.

Nor is it conceivable to me that producers of plays for the legitimate theatre or for television could be required to submit their manuscripts to censors on pain of penalty for producing them without approval. Certainly the

spoken word is as freely protected against prior restraints as that which is written. Such indeed is the force of our decision in *Thomas* v. *Collins*, 323 U. S. 516, 540. The freedom of the platform which it espouses carries with it freedom of the stage.

The same result in the case of motion pictures necessarily follows as a consequence of our holding in *Joseph Burstyn, Inc.* v. *Wilson*, 343 U. S. 495, 502, that motion pictures are "within the free speech and free press guaranty of the First and Fourteenth Amendments."

Motion pictures are of course a different medium of expression than the public speech, the radio, the stage, the novel, or the magazine. But the First Amendment draws no distinction between the various methods of communicating ideas. On occasion one may be more powerful or effective than another. The movie, like the public speech, radio, or television, is transitory—here now and gone in an instant. The novel, the short story, the poem in printed form are permanently at hand to reenact the drama or to retell the story over and again. Which medium will give the most excitement and have the most enduring effect will vary with the theme and the actors. It is not for the censor to determine in any case. The First and the Fourteenth Amendments say that Congress and the States shall make "no law" which abridges freedom of speech or of the press. In order to sanction a system of censorship I would have to say that "no law" does not mean what it says, that "no law" is qualified to mean "some" laws. I cannot take that step.

In this Nation every writer, actor, or producer, no matter what medium of expression he may use, should be freed from the censor.