## (November 14, 1956)

■ In the Matter of EXCELSIOR PICTURES CORP., Petitioner, against REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondents.

MEMORANDUM BY THE COURT. We have reviewed the motion picture film *Garden of Eden,* license for which has been denied by the Motion Picture Division of the State Department of Education on the ground that it is indecent within the scope of the New York licensing statute (Education Law, § 122). This determination was affirmed by the Regents and the proceeding under article 78 of the Civil Practice Act, now before us, is to review that determination.

The specific and limited portions of the film to which the licensing authorities object are exposed portions of human bodies in scenes depicting a nudist colony. There is, however, no full exposure of any adult nude body. The objectionable aspect of the film does not reach a magnitude which, under the limitations with which the Supreme Court has covered over the power of a State to censor films, would warrant prior restraint. The case is governed by our decision in *Matter of Capitol Enterprises* v. *Board of Regents* (1 A D 2d 990). In view of the decisions of the Court of Appeals in this area, a majority of the court are of opinion that a decision striking down the entire statute as unconstitutional ought not be entered by an intermediate appellate court.

FOSTER, P. J. (concurring). I concur in the decision for annulment but for a different reason than that stated by my associates. It seems to me that the underlying constitutional issue should be faced and squarely decided. I am well aware of the reluctance on the part of courts to decide a constitutional issue when any other reasonable alternative is presented, a reluctance that is well founded of course. Judicial interference with legislation on constitutional grounds is a power to be exercised with great caution and only in the clearest of cases. But the situation in this State with respect to the censorship of motion pictures has reached such a stage that I think the constitutional issue is paramount. The Regents are struggling with the enforcement of a statute (Education Law, § 122) of doubtful validity that has been voided or diluted in piecemeal fashion by the courts so that practically no power remains.

Some confusion has arisen because many of the cases contain dictums on the subject without sharply distinguishing between prior restraint, or preventive censorship, and post restraint, or punitive censorship. We are not here concerned with any form of post censorship, such as injunctive action or criminal prosecution after a motion picture has once been presented. We are concerned only with the question of whether the State may require the examination of a picture, in connection with a licensing system, before it is presented to the public; and if any State has such power whether the present New York statute is sufficiently explicit and precise in terms to justify its constitutionality. It was assumed before the decision of the Supreme Court of the United States in the *Burstyn* case (*Joseph Burstyn, Inc.,* v. *Wilson,* 343 U. S. 495), on the basis of an earlier decision, that any State had such power on the theory that motion pictures were merely a species of entertainment spectacles, and hence properly subject to censorship. In the *Burstyn* case the court rejected this rationale, and held significantly that motion pictures are a medium for the communication of ideas and therefore protected by the free speech and free press guaranties of the Federal Constitution. However it did not void the New York statute out of hand, but rested its decision on the ground that the term "sacrilegious" was too vague a standard to justify censorship. It refused to decide "whether a state may censor motion pictures under a clearly drawn statute designed and applied

to prevent the showing of obscene films." (p. 506). It went on to say (p. 502) that: "It does not follow that the Constitution requires absolute freedom to exhibit every motion picture of every kind at all times and all places", and it restated (p. 503) an earlier dictum that "'protection even as to previous restraint is not absolutely unlimited. But [this] limitation has been recognized only in exceptional cases.'" (*Near* v. *Minnesota*, 283 U. S. 697.) In the case just cited a Minnesota statute was struck down which permitted suppression by injunction of a defamatory newspaper. It was held that liberty of the press gives immunity from previous restraint.

After the *Burstyn* case the Supreme Court voided the application of several censorship statutes with regard to motion pictures without stating its views and relying on the holding in the *Burstyn* case (*Gelling* v. *Texas*, 343 U. S. 960; *Commercial Pictures Corp.* v. *Board of Regents*, 346 U. S. 587; *Superior Films* v. *Dept. of Educ.*, 346 U. S. 587). These cases had to do with terms such as "immoral" and "tends to corrupt morals." In view of these cases, including the *Burstyn* case, it is impossible for me to escape the conclusion that our New York statute has been voided piecemeal. It provides that a picture shall not be licensed if it is "obscene, indecent, immoral, inhuman, sacrilegious, or is of such a character that its exhibition would tend to corrupt morals or incite to crime". (Education Law, § 122). Practically all of these terms have been condemned either directly or by implication. It would seem therefore wholly logical to say that our censorship statute is invalid for the reasons stated in the *Burstyn* case, and the cases decided thereafter by the Supreme Court in reliance thereon. The Supreme Court of Ohio has taken this view, and also the Supreme Court of Pennsylvania (*R. K. O. Radio Pictures* v. *Department of Educ.*, 162 Ohio St., 263; *Hallmark Production* v. *Carroll*, 384 Pa. 348). I would go further and say that the State may not require its imprimatur by way of previous restraint as a condition for a license, but in any event since the New York statute has already been voided piecemeal I can see no useful purpose served in refraining from a declaration that it is unconstitutional *in toto*. Actually the only purpose served by silence is to compel the Regents to try to enforce a statute that is already a dead letter.

Bergan, Halpern, Zeller and Gibson, JJ., concur in Memorandum by the Court; Foster, P. J., concurs in the result in a separate memorandum.

Determination annulled and the matter remitted to the license division with direction to license the film, with $50 costs to petitioner.

