In the Matter of Kingsley International Pictures Corporation, Petitioner, against Regents of the University of the State of New York, Respondent.

Third Department, July 24, 1957.

*Ephraim S. London* and *Sherman P. Kimball* for petitioner.

*Charles A. Brind, Jr., John P. Jehu, Elizabeth M. Eastman* and *George B. Farrington* for respondent.

*Charles J. Tobin, Jr., Porter R. Chandler* and *John B. Coleman, Jr.,* for New York State Catholic Welfare Committee, *amicus curiæ.*

*Charles Ballon, Nanette Dembitz* and *Jacob M. Usadi* for New York Civil Liberties Union, *amicus curiæ.*

Coon, J.  The motion picture under review is "Lady Chatterley's Lover", an adaptation of the novel of the same name by D. H. Lawrence.  The motion picture division of the State Education Department denied a license unless three sequences which were regarded as "immoral" were deleted.  In appeal by petitioner the Regents not only upheld the original licensing authorities, but determined that the entire picture was immoral under section 122 of the Education Law as modified by section 122-a (L. 1954, ch. 620), largely upon the ground that the picture presents "adultery as a desirable, acceptable and proper pattern of behavior."  This criterion comes from the language of section 122-a, obviously adopted in an attempt to add definiteness and clarity to the words used in section 122, and with the intended purpose of overcoming the United States Supreme Court decisions which held, in effect, that the terms "immoral" and "tend to corrupt morals," as used in section 122, were too vague to meet constitutional requirements.  (*Joseph Burstyn, Inc.,* v. *Wilson,* 343 U. S. 495; *Commercial Pictures Corp.* v. *Regents,* 346 U. S. 587.)

The Legislature, in enacting section 122-a, has demonstrated a legislative intent to continue prior restraint in New York State, and has attempted to supply the necessary definiteness to the terms "immoral" and "of such a character that its exhibition would tend to corrupt morals."

Section 122-a illustrates the difficulty of defining such words.  Subdivision 1 thereof provides: "For the purpose of section one hundred twenty-two of this chapter, the term 'immoral' and the phrase 'of such a character that its exhibition would tend to corrupt morals' shall denote a motion picture film or part thereof, the dominant purpose or effect of which is erotic or pornographic; or which portrays acts of sexual immorality, perversion, or lewdness, or which expressly or impliedly presents such acts as desirable, acceptable or proper patterns of behavior."

Ordinarily such a word as "immoral", which might have one meaning to one person or group of persons and another meaning to another person or group of persons, cannot be defined with such exactness or precision as would leave no field of individual opinion and discretion open to the viewer.  Adding

more adjectives or more words which are likewise open to different opinion helps little. In fact, counsel for respondents stated in his brief before the Supreme Court in the *Commercial Pictures* case: "The New York statute, we think, is as clear as it can possibly be made". (Referring to § 122 before the amdt.)

For instance, under section 122-a, the censoring body must determine what "the dominant purpose or effect" of a picture is, a matter upon which different people or groups of people might disagree. The same is true as to what constitutes "acts of sexual immorality, perversion, or lewdness".

As we interpret the decisions of the Supreme Court of the United States in the *Burstyn* case, the *Commercial Pictures* case, and *Holmby Prods.* v. *Vaughn* (350 U. S. 870), a statute which leaves any field open to the opinion, discretion or individual point of view of a censor in banning a moving picture violates the Fourteenth Amendment. If any field of prior restraint is left open it would seem clear that the Supreme Court decisions forbid a statute as broad as the one under consideration.

Under the decisions, it is clear that the standard set up in section 122-a relied upon by the Board of Regents in this case, namely, the presentation of adultery or similar "immoral" acts "as desirable, acceptable or proper patterns of behavior", is not a permissible standard under the United States Constitution for prior restraint.

The most recent decision on this subject by the Court of Appeals of New York State is *Matter of Excelsior Pictures Corp.* v. *Regents* (3 N Y 2d 237). While the Court of Appeals did not strike down the censorship entirely, the court interpreted the United States Supreme Court decisions as limiting censorship to a picture which is "obscene" as that term is narrowly defined in modern judicial decisions. As Judge DESMOND stated in his opinion in that case: "Since the Constitution forbids any prior restraint of a motion picture which is not obscene" and, "Since the film is certainly not 'obscene' in the eyes of the law, it cannot, under United States Supreme Court decisions hereinafter listed and binding upon us, constitutionally be subjected to prior restraint." The opinions in the *Excelsior Pictures* case so thoroughly and completely analyze all of the authorities which are pertinent here it seems unnecessary to discuss them further. We have viewed the picture under consideration here and do not think it can be considered obscene as that term is now judicially defined. Hence, the license denial was unconstitutional.

The determination should be annulled, with $50 costs, and the matter remitted to the license division with a direction to license the film.

BERGAN, HALPERN and GIBSON, JJ., concur with COON, J.; FOSTER, P. J., concurs in the result.

Determination annulled, with $50 costs, and the matter remitted to the license division with a direction to license the film.