Dye, J.
(dissenting). When sections 122 and 122-a of the Education Law are read in the light of recent decisions dealing with administrative censorship of motion picture film, it seems clear that the learned Appellate Division, Third Department, quite properly annulled the determination of the Board of Regents and directed that a license issue for the showing of the motion picture entitled “ Lady Chatterley’s Lover ”.
As the record indicates, the Regents sitting as a Board of Review of its Division of Motion Pictures (an administrative agehcy empowered to censor motion picture film in advance of public showing,'Education Law, §§ 122-132) affirmed a denial Of the petitioner’s application for a license to exhibit the film in question — not conditionally, unless certain designated sequences Were deleted, as directed by the acting director of the Motion Picture Division, but absolutely and finally in language reflecting the vague generality of the statute, viz., that ‘1 the said film is ‘ immoral ’ within the meaning of the provisions of Sections 122 and 122-a of the Education Law” (Journal of Regents meeting, Sept. 28, 1956).
The correctness of that ruling, which a bare majority Of this court is about to approve, depends in the final analysis solely on whether the enforcement of sections 122 and 122-a (subd. 1) satisfies constitutional due process.
When the Regents relied on the term 1 ‘ immoral ’ ’ and the phrase 1 ‘ tend to corrupt morals ’ ’, as used' in section 122, as authority for banning the motion picture film La Ronde, the Supreme Court reversed, without opinion (Matter of Commercial Pictures Corp. v. Board of Regents, 305 N. Y. 336, revd. 346 U. S. 587), at the same timé it decided Superior Films v. Department of Educ. Of Ohio (346 U. S. 587), both on authority of Joseph Burstyn, Inc., v. Wilson (343 U. S. 495) which had sustained a prior attack on section 122 as being too vague and indefinite to satisfy constitutional safeguards by providing essential criteria and Standards for the guidance of administrative discretion.' To meet the consequential effect of that adverse ruling section 122-a of the Education Law (L. 1954, ch. 620) was enacted in an effort to more precisely define the term “immoral” and the phrase “tend to corrupt morals” as used in section 122 for the purpose of censorship as denoting ‘ ‘ a motion picture film or part thereof, the dominant purpose
*371 or effect of which is erotic or pornographic or which portrays acts of sexual immorality, perversion, or lewdness, or which expressly or impliedly presents such acts as desirable, acceptable or proper patterns of behavior ” (Education Law, § 122-a, subd. 1; emphasis supplied).
However well intentioned, the language as used still falls short of providing fundamental standards deemed essential for the guidance of administrative discretion. The added words are no more meaningful than the term “ sacrilegious ”, “immoral”, “tend to incite to crime”, “ prejudicial to the best interests ”, “ harmful and indecent ”, all found too general and unprecise to meet constitutional standards (Joseph Burstyn, Inc., v. Wilson, supra; Matter of Commercial Pictures v. Board of Regents, supra; Winters v. New York, 333 U. S. 507; Gelling v. Texas, 343 U. S. 960; Superior Films v. Department of Educ. of Ohio, 346 U. S. 587, supra; Matter of Excelsior Pictures Corp. v. Regents, 3 N Y 2d 237; Holmby Prods, v. Vaughn, 350 U. S. 870; Hallmark Prods. v. Carroll, 384 Pa. 348). The term “ immoral ” as used in section 122 has not been clarified by the amendment. It is still vague and indefinite. When the censor relies on the term “immoral” as a basis for prior restraint, he necessarily must resort to his own notion of its meaning since the statute itself provides no test or standards to guide him in the'exercise of his discretion. As the learned Justice, writing for the court below, succinctly pointed out: ‘ ‘ A statute which leaves any field open to the opinion, discretion or individual point of view of a censor in barring a moving picture violates the Fourteenth Amendment ’ ’.
No one contends that the film in question is obscene within the narrow legal limits of obscenity as recently defined by the Supreme Court in the application of which that court has said it is vital ‘ ‘ that the standards for judging obscenity safeguard the protection of freedom of speech and press for material which does not treat sex in a manner appealing to prurient interest” (Roth v. United States, 354 U. S. 476, 488; Matter of Excelsior Pictures Corp. v. Regents, 3 N Y 2d 237, supra; Holmby Prods. v. Vaughn, 350 U. S. 870, supra). This film is not being banned because of the manner in which the sequences are produced or because of any existing clear and present danger — elements which must be proven before prior *372 restraint or subsequent punishment may be justified (Dennis v. United States, 341 U. S. 494; Marsh v. Alabama, 326 U. S. 501; Thomas v. Collins, 323 U. S. 516; Thornhill v. Alabama, 310 U. S. 88; De Jonge v. Oregon, 299 U. S. 353; Stromberg v. California, 283 U. S. 359). The Regents have banned a showing of: this film in its entirety because, in their opinion, its theme is contra bonos mores, and this in the face of the circumstance, that the book, on which it is based, has long been published and circulated freely without benefit of administrative censorship. This they may not do. Since Burstyn and Commercial Pictures (supra),- the essential particulars of section 122 have been deemed too vague and too indefinite to satisfy fundamental essentials of statutory validity, and these deficiencies have not been cured or supplied by anything contained in subdivision 1 of section 122-a. As I read it, the statute, as amended, continues to impinge on the constitutional guarantee afforded free speech and communication by the First and Fourteenth Amendments to the Federal Constitution.
A motion picture film should not be singled out as a subject for prior restraint under the beneficient guise of regulating community mores, any more than the prior censorship of press, books, the theatre or other media of communication which, as we know, includes a motion picture. Censorship under such guise is a type of paternalism that lends itself to the whim and caprice of the administrator. Whenever tested, censorship of motion picture film in advance has been disapproved. All but six States in the Union- either do not have any film censorship in advance or have discontinued such practice. It should be noted that discontinuance of administrative censorship of motion picture film in advance is not likely to create a vacuum for carte blanche exhibition of indecent films, so long as we have on our statute books appropriate penal laws to deal with the suppression of legally offensive motion picture film and the punishment of its exhibitors (cf. Penal Law, §§ 1141, 1141-a; Code Crim. Pro., § 22-a; Brown v. Kingsley Books, 1 N Y 2d 177, affd. 354 U. S. 436).
For these reasons and for the reasons so well stated by Judge Fuld with which I agree, I vote-to affirm the judgment appealed from, with costs.