### 17812

CITY OF DARLINGTON, Respondent, v. Arthur W. STANLEY, Jr., Jerry Wingate, John Nettles, and Willie Lee Johnson, Appellants

(122 S. E. (2d) 207)

*Messrs. Jenkins & Perry,* of Columbia, and *Elliott D. Turnage,* of Darlington, *for Appellants,*

*Jerome F. Pate, Esq.,* of Darlington, *for Respondent,*

July 28, 1961.

OXNER, Justice.

Appellants were convicted in the Municipal Court of the City of Darlington of "staging a parade or procession on the streets" without a permit, in violation of the following ordinance:

"Whereas, the City Council of the City of Darlington deems it necessary for the preservation of the health, welfare and protection of the citizens of the City of Darlington, also for the preservation of the peace and dignity of said citizens, as well as to maintain law and order, to prohibit parades and processions within the corporate limits of the City of Darlington, without applicants desiring to stage said parades or processions having first applied for and secured a special permit from the City Council of the City of Darlington to use the public streets and sidewalks for said parades and processions as hereinafter provided.

"Now, therefore, be it ordered and ordained by the City Council of the City of Darlington in council assembled and by authority thereof:

"Section 1. That on and after the adoption and ratification of this Ordinance, it shall be unlawful for any person or persons, firms or organizations to stage any parade or procession on any of the streets or in any other public places within the corporate limits of the City of Darlington without first having applied for and secured a special permit from the City Council to do so, excepting funeral processions, the armed forces of the U. S. Army or Navy, the military forces of this State and the force of the police and fire departments of the City of Darlington.

"Section 2. Such application shall contain the following information: the time of such proposed parade or procession, the streets to be used, the number of persons or vehicles to be engaged and the purpose of such parade or procession; and, upon receipt of such application, the Mayor or City Council shall, in its discretion, issue such permit subject to the public convenience and public welfare."

(We have omitted Section 3, which fixes the penalty for violation of the ordinance, Section 4, which contains the usual clause repealing all ordinances inconsistent therewith, and Section 5, which fixes the date upon which the ordinance is to become effective. None of these sections has any bearing on the question before us.)

Each of the appellants was sentenced to pay a fine of $55.00 or to imprisonment for a period of thirty days. Their conviction was sustained by the Circuit Court. This appeal followed.

Appellants admit that without making any attempt to obtain a permit, they engaged in a parade or procession in violation of the ordinance. We are, therefore, not called upon to determine whether the stipulated facts upon which the case was tried show a parade or procession within the meaning of the ordinance. The sole contention made in the Circuit Court and here is that the ordinance is unconstitutional in that (1) it fixes no standard or guide for the granting or denial of a permit and leaves the matter to the uncontrolled will of the City Council, and (2) it deprives appellants of their right of freedom of speech and assembly guaranteed by Section 4 of Article 1 of the Constitution of South Carolina and the right of freedom of speech and assembly guaranteed by the First Amendment to the Constitution of the United States, which is protected by the Due Process Clause of the Fourteenth Amendment against invasion by state or municipal action.

As stated by Mr. Justice Jackson in *Kunz v. People of the State of New York,* 340 U. S. 290, 71 S. Ct. 312, 320,

95 L. Ed. 280, "cities throughout the country have adopted the permit requirement to control private activities on public streets and for other purposes." For a long number of years ordinances of this character have been in effect in most of the municipalities of South Carolina. Authority to enact same is given by Section 47-61 of the 1952 Code.

We shall first determine whether the ordinance denies the constitutional guaranty of freedom of speech and assembly. Although these rights are fundamental, they are not in their nature absolute and must be exercised in subordination to the general comfort and convenience and in consonance with peace and good order. In *Poulos v. State of New Hampshire,* 345 U. S. 395, 73 S. Ct. 760, 766, 97 L. Ed. 1105, 30 A. L. R. (2d) 987, the Court said: "The principles of the First Amendment are not to be treated as a promise that everyone with opinions or beliefs to express may gather around him at any public place and at any time a group for discussion or instruction. It is a *non sequitur* to say that First Amendment rights may not be regulated because they hold a preferred position in the hierarchy of the constitutional guarantees of the incidents of freedom. This Court has never so held and indeed has definitely indicated the contrary. It has indicated approval of reasonable nondiscriminatory regulation by governmental authority that preserves peace, order and tranquility without deprivation of the First Amendment guarantees of free speech, press and the exercise of religion."

The right to engage in a parade is one phase of the exercise of the fundamental right of free speech. But such right is subject to reasonable and nondiscriminatory regulation and limitation. 25 Am. Jur., Highways, Section 190; 16 C. J. S., Constitutional Law, § 213(8); 64 C. J. S., Municipal Corporations, § 1769; Annotation 40 A. L. R. at page 954. It is common knowledge that parades or assemblages may disrupt traffic, both pedestrian and vehicular, and destroy the primary purpose of the streets as a means of travel and transportation from place to place.

Municipal authorities are charged with the duty of maintaining safety and order upon the streets for the comfort and convenience of the community. This problem was well analyzed by Chief Justice Hughes in *Cox v. State of New Hampshire,* 312 U. S. 569, 61 S. Ct. 762, 765, 85 L. Ed. 1049, 133 A. L. R. 1396, in the following language:

"Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses. The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need. Where a restriction of the use of highways in that relation is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection. * * * As regulation of the use of the streets for parades and processions is a traditional exercise of control by local government, the question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places."

In construing this ordinance, it will be presumed that the City Council of Darlington had in mind a constitutional rather than an unconstitutional purpose. *Powell v. Thomas,* 214 S. C. 376, 52 S. E. (2d) 782. It will not be declared unconstitutional if by any reasonable construction, it can be harmonized with the State and Federal Constitutions. *Jones v. Prudential Insurance Co.,* 210 S. C. 264, 42 S. E. (2d) 331; *Byrd v. Lawrimore,* 212 S. C. 281, 47 S. E. (2d) 728.

We think it is obvious that this ordinance was not designed to suppress in any manner freedom of speech or assembly but to reasonably regulate the use of the streets in the public interest. It does not seek to control what may be said on the streets either by speech or by writing, and is applicable only to organized formations of persons using the streets and not to individuals or groups who are not engaged in a parade or procession. As stated in the preamble, the City Council deemed this enactment necessary "for the preservation of the health, welfare and protection of the citizens of the City of Darlington, also for the preservation of the peace and dignity of said citizens, as well as to maintain law and order." The requirement that the applicant for a permit state the time of the proposed parade, the course to be traveled, the number of persons or vehicles involved and the purpose of such parade is to assist the municipal authorities in deciding whether or not the issuance of a permit is consistent with traffic conditions at any particular time and place. The fact that such detailed information is required to be presented to the City Council negatives appellants' claim that the power given to that body was to be exercised arbitrarily or for some capricious reason of its own. All of the information required to be furnished is related to the proper regulation of the use of the streets. Appellants argue that the purpose of the parade is wholly immaterial and the fact that this information is required indicates an intent to permit the municipality to act capriciously and arbitrarily. We do not think so. The decisions disclose that a number of ordinances and statutes contain such a requirement. It is not unreasonable. The purpose of the parade may have a bearing on the precautions which should be taken by the police authorities for the protection of those engaged in the parade and the general public.

It is argued that the ordinance applies not only to a parade or assemblage on the streets but to other public places. However, appellants cannot attack the ordinance in this respect for they are concerned only with its application to the use of the streets.

Nor do we find any merit in appellants' claim that the ordinance is invalid because it fixes no standard to be observed by the City Council in granting or withholding permits, thereby enabling that body to act arbitrarily and deny a permit to those having social, political or other views with which it might disagree. It is true that the general rule in this State, as elsewhere, is that a statute or ordinance which in effect reposes an absolute, unregulated, and undefined discretion in an administrative or public body will not be upheld. *Henderson v. City of Greenwood,* 172 S. C. 16, 172 S. E. 689; *Schloss Poster Advertising Co. v. City of Rock Hill,* 190 S. C. 92, 2 S. E. (2d) 392; *South Carolina State Highway Department v. Harbin,* 226 S. C. 585, 86 S. E. (2d) 466. But as stated in the annotation in 92 A. L. R. at page 410, an exception or qualification to this rule is frequently made "where it is difficult or impracticable to lay down a definite comprehensive rule, or the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare." Also, see 25 Am. Jur., page 552.

We think the foregoing exception applies here. We agree with the following statement found in the Circuit decree: "Due to varying traffic conditions and the complex problems presented in maintaining an orderly flow of traffic over the streets and highways it clearly appears that it would be practically impossible to formulate in an ordinance a uniform plan or system relative to every conceivable parade or procession." The standard to be applied is obvious from the purpose of the ordinance. It would be of little or no value to state that the standard by which the City Council should be guided is the safety, comfort and convenience of persons using the streets. That is already implicit in the ordinance, as we construe it. The members of the Council may not act as censors of what is to be said or displayed in any parade. If they should act arbitrarily, resort may be had to the courts. It is reasonable to assume from the stipulated facts in this case that the City Council

of Darlington would have granted appellants a permit to engage in this parade if same had been sought. A denial would have been warranted only if after a required investigation it was found that the convenience of the public in the use of the streets at the time and place set out in the application would be unduly disturbed. As pointed out by Chief Justice Stone in *Jones v. City of Opelika,* 316 U. S. 584, 62 S. Ct. 1231, 1241, 86 L. Ed. 1691 : "When a licensing statute is on its face a lawful exercise of regulatory power, it will not be assumed that it will be unlawfully administered in advance of an actual denial of application for the license."

Appellants stress the use of the word "discretion" in Section 2 but we do not construe this as meaning an unfettered discretion but one to be exercised in connection with the safety, public order and convenience in the use of the streets. This construction is fortified by the phrase in Section 2 immediately following which states that the permit shall be issued "subject to the public convenience and public welfare."

The foregoing conclusion is fully sustained by *State v. Cox,* 91 N. H. 137, 16 A. (2d) 508, 514. The Court there was called to pass upon the constitutionality of a statute requiring persons using the public streets for a parade or procession to procure a special license therefor from the local authorities. As does the ordinance before us, no standard or guide was laid down in the statute for granting or refusing a license. Defendants ignored the statute and engaged in a parade without the required license or permit. They contended that the statute was invalid under the Fourteenth Amendment in that it deprived them of their rights of freedom of worship, freedom of speech and press, and freedom of assembly, vested unreasonable and unlimited arbitrary and discriminatory powers in the licensing authority, and was vague and indefinite. All of these contentions were overruled and the statute sustained. The Court pointed out that the application for a permit gave the public authorities notice in advance so as to afford opportunity for proper

policing, and further observed that in fixing time and place, the license served "to prevent confusion by overlapping parades or processions, to secure convenient use of the streets by other travelers, and to minimize the risk of disorder." In answering the contention that the act was invalid as vesting in the local authorities uncontrolled discretion, the Court said:

"The act is implicit in its requirement that the licensing authority act reasonably in granting or denying licenses, and with reference to the object of public order on the public ways. If it does not in express terms 'make comfort or convenience in the use of streets * * * the standard of official action' (*Hague v. Committee for Industrial Organization,* 307 U. S. 496, 516, 59 S. Ct. 954, 964, 83 L. Ed. 1423), the necessary inference is that it does based upon the presumption in favor of the validity of legislation as re-enforced by the express provision of the act bestowing 'delegated powers' upon the authority, as a grant intended to be only of due legislative power which may properly be delegated. The discretion thus vested in the authority is limited in its exercise by the bounds of reason, in uniformity of method of treatment upon the facts of each application, free from improper or inappropriate considerations and from unfair discrimination. A systematic, consistent and just order of treatment, with reference to the convenience of public use of the highways, is the statutory mandate. The licensing authority has no delegation of power in excess of that which the legislature granting the power has, and the legislature attempted to delegate no power it did not possess."

In an opinion by Chief Justice Hughes, the United States Supreme Court unanimously held that the statute, as construed by the Supreme Court of New Hampshire, violated no Federal constitutional rights of defendants. *Cox v. New Hampshire, supra,* 312 U. S. 569, 61 S. Ct. 762, 85 L. Ed. 1049, 133 A. L. R. 1396.

An ordinance copied from the foregoing New Hampshire statute was sustained in *State v. Derrickson and Poulos,* 97

N. H. 91, 81 A. (2d) 312, which was affirmed by the United States Supreme Court. *Poulos v. State of New Hampshire, supra,* 345 U. S. 395, 73 S. Ct. 760, 97 L. Ed. 1105, 30 A. L. R. (2d) 987.

We think the construction adopted by the Supreme Court of New Hampshire is sound. We place the same construction upon this ordinance.

We conclude that the ordinance does not violate either the Constitution of this State or that of the United States and should be sustained.

Affirmed.

TAYLOR, C. J., and LEGGE and MOSS, JJ., concur.

LEWIS, J., disqualified.