**Buren Lee FURR, Jr., Anthony C. Hill, Jeffery Blake Lindsey, George C. Moore, Bill Dean Randall, William Richard Randall, and Frank J. Townsend, Plaintiffs,**

v.

**TOWN OF SWANSEA; Kathryn B. Sharpe (Mayor), W. Venson Huckabee, Hozzie Lee Berry, Llewellyn Sharpe, Malachi A. Williams, Members of Town Council; and Police Chief William H. Hoffman, Defendants.**

Civ. A. No. 83–3196–0.

United States District Court, D. South Carolina, Columbia Division.

Oct. 12, 1984.

the same batch as the bomb scene or P & G tapes.

Orin G. Briggs, Columbia, S.C.; for plaintiffs; John W. Whitehead, Manassas, Va., of counsel.

George S. Nicholson, Jr., Lexington, S.C., Wilburn Brewer, Columbia, S.C., for defendants.

## OPINION AND ORDER

PERRY, District Judge.

The plaintiffs, members of Gethsemane Anabaptist Church, commenced this action against the defendant, Town of Swansea, South Carolina, its Mayor, members of the Town Council and police chief, seeking declaratory and injunctive relief against interference with the exercise by plaintiffs of their rights of freedom of speech and assembly as guaranteed by the First and Fourteenth Amendments to the United States Constitution. Plaintiffs also seek monetary damages. The matter is now before the Court pursuant to the plaintiffs' application for a preliminary injunction.[1]

### I

The plaintiffs allege in their complaint that each of them have on one or more occasions been arrested for preaching on the streets of Swansea, South Carolina without having previously obtained a permit from the Chief of Police or the Town Council as required by an Ordinance of the Town of Swansea. The Ordinance provides as follows:[2]

*Section 13.401.*

PERMIT REQUIRED FOR PREACHING, LECTURING, PUBLIC SPEAKING, EXHIBITING, AND ENTERTAINING ON STREETS.

No gatherings for the purpose of preaching, lecturing, public speaking, exhibition, or entertainment of any nature will be permitted on the streets, sidewalks or publicways, except in accordance with a permit issued by the Mayor, upon written application made not less than twenty-four (24) hours prior to the time of such preaching, lecturing, public speaking, exhibition, or entertainment.

*Section 13.401.1.*

APPLICATION FOR PERMIT.

Application for a permit for preaching, lecturing, public speaking, exhibition, or entertainment shall contain the time and date of the proposed gathering, the estimated number of persons attending said gathering, and the purpose of such gathering.

*Section 13.401.2.*

ISSUANCE OF PERMIT.

Upon receipt of an application for a permit for preaching, lecturing, public speaking, exhibition, or entertainment, the Mayor and Council shall issue a permit subject to the following considerations:

1. The time at which the proposed gathering is scheduled to take place;

2. The place at which the proposed gathering is to take place;

3. The number of participants expected to attend the proposed gathering;

4. The manner in which the proposed gathering is to take place;

5. The surrounding businesses and the likely effect of the proposed gathering thereon;

6. Traffic and the likely effect of the proposed gathering thereon;

7. Public convenience, safety, and welfare, and the likely effect of the proposed gathering thereon.

*Section 13.401.3.*

IMPOSITION OF RESTRICTIONS.

The council, after considering the factors enumerated in Section 13.401.2 above, shall have the authority to impose such time, place, and manner restrictions, conditions, and safeguards upon preaching, lecturing, public speaking, exhibition, or entertainment, as it shall deem fit, proper, and necessary to maintain the public order.

---

**1.** This is a revision of this Court's Order of February 27, 1984, granting a preliminary injunction. This revision is prompted by a motion by the defendants to reconsider the February 27 Order and it addresses all the concerns argued by the defendants in their motion. The Court adheres to the views expressed in its prior order as herein modified.

**2.** The Ordinance became effective December 1983. Prior to that date Section 13.401 of the Ordinance provided that "[n]o preaching, lecturing or speaking, exhibition or entertainment of any nature will be permitted on the streets, sidewalks or public ways, unless a written permit for the same be obtained from the Chief of Police." This prohibition no longer appears and has been replaced by the new Section 13.401.

Plaintiffs further allege that their visits to the Town of Swansea were made solely for the purpose of "preaching the Gospel of the Lord Jesus Christ" and that they have conducted themselves in an orderly, courteous and respectful manner; that nevertheless on November 12, 1983 and December 3, 1983 and again on December 10, 1983 they were arrested by the Swansea Police.[3]

In their answer the defendants admit that the plaintiffs were arrested by Swansea policemen on the three occasions alleged; and they assert that they have requested the plaintiffs to apply for a permit to preach in the streets of Swansea but that the plaintiffs have refused to apply. Defendants assert *inter alia* that the Ordinance pursuant to which the plaintiffs were arrested is a reasonable regulation as to time, place and manner of the plaintiffs' exercise of their First Amendment rights and that it is not a prior restraint on the exercise of plaintiffs' First Amendment rights. The defendants seek an Order prohibiting plaintiffs from preaching in the streets of Swansea without a permit "as required by the Ordinances of the Town of Swansea." Defendants also seek dismissal of the complaint, together with costs and attorney fees.

The plaintiffs testified during the hearing on the motion that they have periodically, each Saturday at about 10:00 o'clock A.M., proceeded to Swansea for the purpose of preaching the Gospel. They generally proceeded as follows: Only one plaintiff speaks at any given time, usually for a period of ten to fifteen minutes. While speaking, the minister stands near the edge of a sidewalk on Monmouth Street, where most of the commercial establishments are located. The other plaintiffs, while not preaching, generally stand on the other side of the same sidewalk, next to a building. When the minister speaking completes his remarks, another minister comes

forward and speaks, usually for the same time period. Plaintiffs acknowledge that they speak loudly in order to be heard, but state that they are orderly in every respect; and that no inconvenience is occasioned to members of the public. The entire process usually concludes at about noon. The largest gathering which has assembled was no more than twelve persons. The preachers do not block the sidewalk or the street. They do, however, hold forth in a fervent, evangelical fashion which many townspeople find offensive.

## II

The ordinance, read in its entirety, prohibits preaching and public speaking on the streets of Swansea, South Carolina without a permit.[4] Moreover, it is understood by the Mayor, Chief of Police and Town Council as having that effect. Persons desiring to preach or otherwise speak must, within "not less than twenty-four (24) hours" prior to such preaching, lecturing or public speaking, apply in writing for permission and state the "time and date of the proposed gathering, the estimated number of persons attending said gathering and the purpose of such gathering." Ordinance, Sections 13.401 and 13.401.1. Otherwise, preaching, lecturing and public speaking, exhibition and entertainment on the streets of Swansea is prohibited. *Id.* Application for the permit, up until ten days before the preliminary injunction hearing on January 16, 1984, had to be made on a form approved by the Town Council which, in addition to requiring the applicant to list his (her) name, telephone number, address, social security number and driver license number, provided that the "Location desired subject to approval by merchants in area in order to maintain good relations in area and also location desired may be changed to an area agreeable to both par-

---

3. Plaintiffs' arrests on November 12 were made pursuant to the old Ordinance. *See* note 2, *supra.* The December 3 and 10th 1983 arrests were made pursuant to the new Ordinance which is here scrutinized. Those arrests and any resultant prosecutions are pending before a South Carolina state court and are not affected by this decision.

4. Unlike its predecessor, (*see* n. 2 *supra*) this ordinance does not specifically prohibit preaching or speaking on the Town streets. However, it does condition the right to preach or otherwise speak upon the possession of a permit issued by Town authorities on the basis of an application submitted not less than twenty-four hours prior to speaking.

ties." The application form also stated that "this permit may be revoked by the Chief of Police or Mayor and Council at any time permit is violated and that [the applicant] will be subject to said charges violated." [5] The Ordinance provides that the Mayor and Council shall issue the permit subject to certain conditions including "the manner in which the proposed gathering is to take place" and "the surrounding businesses and the likely effect of the proposed gathering thereon." Ordinance, Section 13.401.2.[6] And the Ordinance provides that after considering those factors the Town Council "shall have the authority to impose such time, place, and manner, restrictions, conditions, and safeguards upon preaching, lecturing, public speaking, exhibition or entertainment, *as it shall deem fit, proper, and necessary* to maintain public order."

(emphasis added.) Ordinance, Section 13.401.3. It may not be gainsaid that the Town Council's authority under Section 13.401.3 extends to the imposition of any and all limitations deemed by the Town Council to be fit, proper and necessary to maintain public order, including ultimately the denial of a permit.[7]

### III

■ The Ordinance, as written, confers upon the Town Council the absolute power to prohibit preaching and other public speaking on the streets of Swansea. For in deciding whether to impose restrictions upon preaching, lecturing, public speaking or entertainment, the Town Council is to be guided only by its own ideas of the likely effect of the proposed gathering on surrounding businesses, the traffic and the

1. The time at which the proposed gathering is scheduled to take place;

2. The place at which the proposed gathering is to take place;

3. The number of participants expected to attend the proposed gathering;

4. The manner in which the proposed gathering is to take place;

5. The surrounding businesses and the likely effect of the proposed gathering thereon;

6. Traffic and the likely effect of the proposed gathering thereon;

7. Public convenience, safety, and welfare, and the likely effect of the proposed gathering thereon.

---

**5.** The Mayor of Swansea testified at the hearing that a new permit application form came into existence approximately ten days prior to the hearing. The new application form does not contain all the language from the previous form; to wit, all of the language in quotes in the text above is deleted from the new form. The new permit application form requires the applicant to state date, time and location requested, number of people expected, and purpose of the gathering. The permit states the applicant is "granted a permit for (date) from (time) to (time) in the location of (place) for the purpose of (specific purpose) subject to the following restrictions (leaving lines for up to four restrictions)." The permit also states it "is subject to all the applicable laws and the restrictions enumerated above, if any."

No testimony was given concerning the revocation of the old permit application form. The Mayor did state "we" redid the application form after the arrests and "we" approved the new permit application form. The Court notes the arrests of the plaintiffs under the old and new Ordinances were made at times when the old permit application form was deemed applicable to all persons desiring to preach or publicly speak.

The permit form still allows the Mayor and Council unfettered discretion to change the location of a proposed gathering based on the likely effect of the proposed gathering on the surrounding businesses. In fact, the Mayor testified that if the preachers applied for a permit, even on the day of the hearing, they would get one only if they stayed away from people's stores.

**6.** The conditions upon which the permit shall be granted are:

**7.** Plaintiffs presented a transcript of their appearance before the Town Council on November 11, 1983 at which time the plaintiffs and their attorney sought to reach an accord with the defendants on the issue of street preaching. The Mayor stated to the plaintiffs, in response to a request by plaintiffs' counsel that the Town "just drop the issue, that will resolve it," that "we're not going to do that, I mean to tell you I'm going, I said if y'all come back and go on Main Street unless the merchants give it to me in writing it's all right, you'll go back to jail, I'm sorry, but that's the way it's going to be now." One of the ministers replied "and if I have to go to jail I'm going because I feel like I'm right, and just as right as you all are." While testifying at the hearing on the motion for preliminary injunction, the Mayor stated that she has now been advised by her attorneys that she may not base a decision to grant a permit upon the views of the merchants and others.

likely effect thereon and the "public convenience, safety, and welfare and the likely effect of the proposed gathering thereon." Thereupon, the Town Council may impose such restrictions "as it shall deem fit, proper, and necessary to maintain the public order." As such, the Ordinance is a prior restraint upon the plaintiffs' rights of freedom of speech and freedom of assembly, guaranteed by the First Amendment[8] and protected from state interference by the Fourteenth Amendment to the Constitution of the United States. While the exercise of First Amendment freedoms may, under appropriate circumstances be limited,[9] the Supreme Court has consistently held that "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective and definite standards to guide the licensing authority is unconstitutional." *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *See Lovell v. Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Hague v. C.I.O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Schneider v. State*, 308 U.S. 147, 163–165, 60 S.Ct. 146, 151–152, 84 L.Ed. 155 (1939); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Largent v. Texas*, 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873 (1943); *Jones v. Opelika*, 316 U.S. 584, 62 S.Ct. 1231, 86 L.Ed. 1691 (1942) (Stone, C.J., dissenting) (Murphy, J., dissenting), vacated and previous dissenting opinions adopted per curiam, 319 U.S. 103, 63 S.Ct. 890, 87 L.Ed. 1290 (1943); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); *Tucker v. Texas*, 326 U.S. 517, 66 S.Ct. 274, 90 L.Ed. 274 (1946); *Saia v. New York*, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948); *Kunz v. New York*, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951);

*Niemotko v. Maryland*, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951); *Burstyn, Inc. v. Wilson*, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); *Gelling v. Texas*, 343 U.S. 960, 72 S.Ct. 1002, 96 L.Ed. 1359 (1952); *Superior Films, Inc. v. Department of Education*, 346 U.S. 587, 74 S.Ct. 286, 98 L.Ed. 329 (1954); *Staub v. Baxley*, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); *Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Interstate Circuit, Inc. v. Dallas*, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); *Grayned v. Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). An ordinance which makes the peaceful enjoyment of the freedoms of speech and assembly dependent upon the uncontrolled will of an official, as by requiring a permit or license which may be granted or withheld in the discretion of that official, is an unconstitutional prior restraint upon the enjoyment of those freedoms. *Staub v. Baxley*, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958). And the Supreme Court has confirmed that "a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Lovell v. Griffin*, 303 U.S. at 452–453, 58 S.Ct. at 669 (1938); *Schneider v. State*, 308 U.S. at 159, 165, 60 S.Ct. at 149, 152 (1939); *Staub v. Baxley*, 355 U.S. at 319, 78 S.Ct. at 280 (1969); *Freedman v. Maryland*, 380 U.S. 51, 56–57, 85 S.Ct. 734, 737–738, 13 L.Ed.2d 649 (1965). Indeed, "the Constitution can hardly be thought to deny to one subjected to the restraint of such an ordinance the right

---

**8.** The First Amendment provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assembly, and to petition the Government for a redress of grievance.

**9.** See, for example, two recent U.S. Supreme Court decisions: *Clark v. Community for Creative Non-Violence*, —— U.S. ——, 104 S.Ct. 3065,

82 L.Ed.2d 221 (1984) (Application of certain National Park Services regulations prohibiting camping in certain parks does not violate First Amendment rights of demonstrators prohibited from seeking to sleep in Lafayette Park and Mall as a demonstration intended to call attention to the plight of the homeless); *City Council v. Taxpayers for Vincent*, —— U.S. ——, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (upholding constitutionality of municipal ordinance prohibiting posting of signs on public property).

to attack its constitutionality, because he has not yielded to its demands." *Staub v. Baxley,* 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1969).

■ The defendants argue that Swansea is a small municipality and that retail establishments are concentrated within the one block area where the plaintiffs have engaged in preaching. Defendants further point out that on Saturdays, when plaintiffs prefer to preach the gospel, more citizens tend to visit and congregate in the area of retail establishments than on other days. Thus, defendants argue, there is a greater potential for traffic congestion and noise than on other days. Defendants also argue that plaintiffs' sermons and their manner of delivery is offensive to some residents of the community and that the Town should have the right to regulate the times and places the plaintiffs are permitted to preach upon streets. Therefore, Town authorities have offered to permit the plaintiffs to preach in a vacant lot located at the edge of the Town at certain times. But "it goes without saying that 'one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place'" *Grayned v. Rockford,* 408 U.S. 104, 118, 92 S.Ct. 2294, 2304, 33 L.Ed.2d 222 (1972); *Schneider v. State,* 308 U.S. at 163, 60 S.Ct. at 151. Moreover, in considering the merits of these arguments, the Court must begin with the admonition set forth by the Supreme Court many years ago, that

> Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights and liberties of citizens. The privileges of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subor-
> dination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied.

*Hague v. C.I.O.,* 307 U.S. 496, 515–516, 59 S.Ct. 954, 963–964, 83 L.Ed. 1423 (1939). Thus, the Supreme Court has recognized that while a statute can be enacted which prevents serious interference with normal usage of streets and parks, it has condemned licensing systems which vest in officials the discretion to grant or withhold a permit upon broad criteria which is unrelated to proper regulation of public places. *Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); *Saia v. New York,* 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948); *Niemotko v. Maryland,* 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951). And "[e]ven when the use of its public streets and sidewalks is involved, ... a municipality may not empower its licensing officials to roam essentially at will, dispensing or withholding permission to speak, assemble, picket, or parade, according to their own opinions, regarding the potential effect of the activity in question on the 'welfare,' 'decency,' or 'morals' of the community." *Shuttlesworth v. Birmingham,* 394 U.S. 147, 153, 89 S.Ct. 935, 940, 22 L.Ed.2d 162 (1969).

■ Local authorities are not denied the power to devise licensing systems provided the exercise of discretion by licensing officials is appropriately confined. In *Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941) the Supreme Court upheld, as not violative of the First Amendment, a statute requiring a permit and a license fee for parades. The statute had been authoritatively construed by the New Hampshire Supreme Court to require issuance of a licensing permit upon proper consideration of such factors as time and place. The United States Supreme Court observed that

> If a municipality has authority to control the use of its public streets for parades or processions, as it undoubtedly has, it cannot be denied authority to give consideration, without unfair discrimination, to time, place and manner in relation to the

other proper uses of the streets. We find it impossible to say that the limited authority conferred by the licensing provisions of the statute in question as thus construed by the state court contravened any constitutional right.

*Cox v. New Hampshire, supra,* at 576, 61 S.Ct. at 766.[10] Later the Supreme Court affirmed the conviction of a minister for conducting a religious service in a New Hampshire park without a license in violation of the same statute. *Poulos v. New Hampshire,* 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953). In both cases, the Court considered the interpretive limitation which the New Hampshire Supreme Court had placed upon the statute [11] and held that the statute as interpreted did not place unfettered authority within the licensing officials to grant or deny the permit.

In *Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951) the Court reached the opposite result. There, an ordinance made it unlawful to hold public worship meetings on New York streets without first obtaining a permit from the city police commissioner. The ordinance provided that "a clergyman or minister of any denomination ... or any person responsible to or regularly associated with any church ... or any lay preacher or lay reader may conduct religious services or

... may preach or expound such cause in any public place or places specified in a permit therefor which may be granted and issued by the police commissioner...." The ordinance also prohibited interferences with street services and it prescribed a penalty for violation of its terms. Kunz, a Baptist minister applied for and was denied a permit. Thereafter, he appeared on Columbus Circle, a New York street, and commenced preaching. He was arrested and convicted of violating the ordinance by speaking on a New York street without a permit.[12] In reversing Kunz's conviction, the Court stated that:

> It is noteworthy that there is no mention in the ordinance of reasons for which such a permit application can be refused. This interpretation allows the police commissioner, an administrative official, to exercise discretion in denying subsequent permit applications on the basis of his interpretation, at that time, of what is deemed to be conduct condemned by the ordinance. We have here, then, an ordinance which gives an administrative official discretionary power to control in advance the right of citizens to speak on religious matters on the streets of New York. As such, the ordinance is clearly invalid as a prior restraint on the exercise of First Amendment rights.

10. Defendants argue that Swansea's Ordinance is identical to the Ordinance in *City of Darlington v. Stanley,* 239 S.C. 139, 122 S.E.2d 207 (1961) and the one in *City of Chester v. Addison,* 277 S.C. 179, 284 S.E.2d 579 (1981) where the South Carolina Supreme Court rejected challenges to the constitutionality of both ordinances. In Stanley the Court held that the discretion granted to local authorities by such an ordinance was limited to the "safety, comfort and convenience of persons using the streets and that the local authorities could not under color of such an ordinance "act as censors of what is to be said displayed in any parade." *Id.,* 239 S.C. 139, 122 S.E.2d at 211. The same result was reached in *City of Chester v. Addison, supra.* But the ordinance here has not been similarly construed. Moreover, the ordinance here permits the Mayor and Town Council to consider the views of the merchants in the area and the likely effect of the proposed gathering thereon.

11. The same statute was involved in *Poulos v. New Hampshire, supra,* as was acted upon in *Cox v. New Hampshire, supra.*

12. Kunz stated that his conviction and duty was to "go out on the highways and byways and preach the word of God." In 1946 he applied for and received a permit. This permit was good only for the calendar year in which it was issued. In November, 1946 that permit was revoked by the police commissioner. The revocation was based on evidence presented at a hearing before the Commissioner that Kunz had ridiculed and denounced other religious beliefs in his meetings. The Ordinance did not contain a power of revocation. Kunz applied for another permit in 1947, and again in 1948 but was notified each time that his application was "disapproved" with no reason for the disapproval being given. It was acknowledged that on the occasion of his arrest Kunz did not have a permit, his several applications for a permit having been "disapproved." In this case, testimony and affidavits presented by defendants demonstrate that they find plaintiffs' preaching distasteful because the plaintiffs have in some instances ridiculed other denominations.

*Kunz v. New York,* 340 U.S. at 293, 71 S.Ct. at 314. The record establishes that here the Town of Swansea sought to use its ordinance to like effect.

The Supreme Court has condemned a variety of statutes and ordinances which contain no standards for the exercise of discretion by the officials having the right to grant or deny permits as violative of the First and Fourteenth Amendments. *Saia v. New York,* 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948) (an ordinance prohibiting the use of sound amplification devices except with permission of the chief of police was declared a violation of the First and Fourteenth Amendments); *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) (an ordinance prohibiting distribution of religious literature without a license was declared to be a prior restraint on freedom of speech in violation of the First and Fourteenth Amendment); *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (an ordinance which required a license from a local official for a public assembly on the city streets, highways or parks was declared void because it could be made the instrument of arbitrary suppression of free expression of views on national affairs); *Niemotko v. Maryland,* 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951) (no ordinance regulated the use of the park; however, by custom and on the advice of the Mayor of Havre de Grace, Maryland, Niemotko and colleagues, all Jehovah's Witnesses, applied for a permit to use the park on four consecutive Sundays. The request was denied. Therafter, Niemotko and colleagues proceeded to hold their meeting. They were arrested and convicted of disorderly conduct. The Court reversed the convictions as violative of the First and Fourteenth Amendments); *Staub v. Baxley,* 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958) (an ordinance prohibiting solicitation of membership in an organization requiring membership dues or assessments without a permit issued by the Mayor and Council was held a violation of the First and Fourteenth Amendments by making the enjoyment of speech contingent upon the uncontrolled will of municipal authorities); *Shuttlesworth v. Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (a Birmingham ordinance prohibiting participation in parades, processions or other public demonstrations without first obtaining a permit from the City Commission was held to be a "law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective and definite standards to guide the licensing authority" and therefore unconstitutional); and *Edwards v. South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963) (Petitioners' convictions in a South Carolina Magistrate's Court of the common law crime of breach of peace were reversed as an infringement of constitutionally protected rights of free speech, free assembly and freedom to petition for redress of grievances, their convictions having not resulted from the "even-handed application of a precise and narrowly drawn regulatory statute evidencing a legislative judgment that certain specific conduct be limited or prescribed").

■ While the ordinance contains language which seeks to guide the licensing officials in their determination of the question whether to grant or withhold permission to preach or otherwise speak while upon the streets of Swansea, it reserves to the Town Council the authority to impose such restrictions and conditions upon the right to publicly speak as it deems fit and proper.[13] No limitation upon the exercise of that authority is contained in the ordinance. No standards are set forth for the formulation of restrictions, conditions or safeguards which the Town Council may impose upon the right to speak.[14] The

---

13. When the plaintiffs were arrested, Swansea officials required persons desiring to preach upon Town streets to submit application for a permit on a form, approved by the Town Council, which conditioned its issuance upon "approval by merchants in the area in order to maintain good relations." The form now in use does not contain that language. However, it does state that "[t]his permit shall be subject to all applicable laws and *the restrictions enumerated above,* if any." [Emphasis added].

14. The Ordinance (§§ 13.401 & 13.401.2) designates both Mayor and Council as the officials

Ordinance thus does not contain "narrow, objective and definite standards to guide the licensing authority" and is a prior restraint upon the plaintiffs' freedoms of speech and assembly, in violation of the First and Fourteenth Amendments to the United States Constitution. *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

### IV

■ In this circuit the standards for interlocutory injunctive relief are set forth in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977) and are known as the "balance of hardship" test. That test requires the flexible interplay of four factors: the possibility of irreparable harm to the plaintiffs if the relief is denied; the apparent strength of plaintiffs' case on the merits; the potential harm to the defendants if the preliminary injunction does issue; and the public interest. *Id. See also Federal Leasing, Inc. v. Underwriters at Lloyds*, 650 F.2d 495 (4th Cir.1981); *Telvest, Inc. v. Bradshaw*, 618 F.2d 1029 (4th Cir.1980). A strong showing of a likelihood of irreparable injury substantially lessens the plaintiffs' need to demonstrate the likelihood of success on the merits. *Maryland Undercoating Co. v. Payne*, 603 F.2d 477 (4th Cir.1977). The strong likelihood of success on the merits likewise reduces the need to meet the other requirements. *Id.*

■ In this case, the likelihood of success is manifest, as has been demonstrated in Part III above. The ordinance against which relief is sought is clearly unconstitutional. Thus, the possibility, indeed the probability, that the plaintiffs will suffer irreparable harm if relief be denied is quite apparent. They are subject to arrest and

prosecution for preaching on the streets of Swansea without first having obtained a permit pursuant to an ordinance which violates their rights of freedom of speech and assembly. And the defendant can suffer no harm by the issuance of a preliminary injunction in this case because they have no right to the enforcement of an unconstitutional law. Finally, while it is evident that some members of the public object to plaintiffs preaching and public speaking, the public interest is best served by the issuance of injunctive relief. It may not be gainsaid that the public interest is served where Courts fully recognize the time honored principle that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official, as by requiring a permit or license which may be granted or withheld in the discretion of such official, violates the First and Fourteenth Amendments to the Constitution of the United States.

Accordingly, the defendants are preliminarily enjoined from enforcing the ordinances and from interfering with the exercise by plaintiffs of the right to preach, speak or assemble upon the streets of Swansea, South Carolina.

IT IS SO ORDERED.

---

who may grant or deny a permit to preach or otherwise speak upon the streets of Swansea. And it reserves to the Town Council the authority to impose such restrictions, conditions and safeguards as it deems fit, proper and necessary

to maintain the public order. However, the authority to grant permission to speak and to impose restrictions is apparently exercised jointly. *See* note 7 *supra.*